**PERFORMANCE UNLIMITED, INC., Plaintiff–Appellant,**

v.

**QUESTAR PUBLISHERS, INC., Defendant–Appellee.**

No. 94–6271.

United States Court of Appeals, Sixth Circuit.

Argued March 27, 1995.

Decided May 1, 1995.

Louis A. Colombo (argued and briefed), Kathryn Young Connors (briefed), Baker & Hostetler, Cleveland, OH, H. Naill Falls, Jr., Farris, Warfield & Kanaday, Nashville, TN, for plaintiff-appellant.

Peter A. Smit (argued), Kevin A. Rynbrandt (briefed), Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, Robert G. McDowell, Baker, Donelson, Bearman & Caldwell, Nashville, TN, for defendant-appellee.

Before: MILBURN, RYAN, and GODBOLD *, Circuit Judges.

MILBURN, Circuit Judge.

This is a case of first impression in this circuit involving the question of whether a district court can issue a preliminary injunction under § 3 of the Federal Arbitration Act, 9 U.S.C. § 3 (1982), when the parties to this action have agreed that arbitration "shall be the sole and exclusive remedy for resolving any disputes between the parties arising out of or involving [the] Agreement" sued upon. Plaintiff Performance Unlimited, Inc. ("Performance") appeals the district court's order denying its motion for a preliminary injunction, filed pursuant to 28 U.S.C. §§ 1332(a)(1), 2201, and 2202, which would have required defendant Questar Publishers, Inc. ("Questar") to pay royalties to Performance while their contract dispute was resolved in arbitration. On appeal, the issues are (1) whether the district court erred in finding that it was precluded from issuing a preliminary injunction because of the mandatory arbitration provision in the parties' licensing agreement and (2) whether the district court erred in finding that Performance did not satisfy the four factors considered in its decision to grant or deny a preliminary injunction. For the reasons that follow, we reverse and remand.

## I.

### A.

This is an action for breach of contract, for a declaration of the parties' contractual rights, and for a preliminary injunction arising from the nonpayment of royalties pursuant to a licensing agreement between Performance and Questar. The royalties which are at the core of the parties dispute stem from the publication of *The Beginner's Bible,* a compilation of children's bible stories.

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

Don Wise, the president of Performance, developed the idea of publishing a series of children's bible stories, illustrated with drawings that would appeal to small children and aimed toward beginning readers. This concept was developed into a series of bible story books which were written by Karyn Henley and were sold under the name *Dovetales.* James R. Leininger invested in Performance in order to develop and promote the *Dovetales* books.

Eventually, however, Wise and Leininger agreed to separate their activities. As a result, Leininger received ownership of the copyrights and trademarks in the *Dovetales* product. Leininger licensed the rights to publish the *Dovetales* stories to Performance. In turn, Wise entered into a license agreement, a sublicense, with Questar to publish a book containing all of the original *Dovetales* stories along with some additional stories written by Karyn Henley, titled *The Beginner's Bible.* The license agreement between Performance and Questar is dated June 22, 1989, and is the subject of this action.

Pursuant to the license agreement, Questar published and began to sell *The Beginner's Bible.* Further, the license agreement obligated Questar to make semi-annual royalty payments to Performance based upon the sales of *The Beginner's Bible.* Questar regularly made the royalty payments to Performance until July of 1994. However, in a letter, dated July 28, 1994, Questar informed Performance that Performance had breached the license agreement. Furthermore, Questar refused to pay the accrued royalties to Performance, indicating in its letter that it wished to initiate a "mediation/arbitration process pursuant to paragraph 11 of the [license] agreement." J.A. 20. Instead, on July 29, 1994, Questar opened an account, the "Beginner's Bible Royalty Escrow Account," at the United States National Bank of Oregon in Sisters, Oregon, and deposited $184,484.94, the accrued royalties, into that account. J.A. 65.

The license agreement between Questar and Performance includes a provision for resolution of disputes. Paragraph 11 of the agreement provides in relevant part:

The Licensor [Performance] and the Publisher [Questar] agree that God, In His Word, forbids Christians to bring lawsuits against other Christians in secular courts of law ... and that God desires Christians to be reconciled to one another when disputes of any nature arise between them....

[I]n their resolution of any disputes that may arise under this Agreement, each party agrees that the provisions for mediation and arbitration set forth below shall be the sole and exclusive remedy for resolving any disputes between the parties arising out of or involving this Agreement.

It is further agreed that the Licensor and the Publisher hereby waive whatever right they might otherwise have to maintain a lawsuit-against the other in a secular court of law, on any disputes arising out of or involving this Agreement.

In the event of such a dispute, the Licensor and the Publisher agree to take the following steps, in the order indicated, until such a dispute is resolved:

(1) the Licensor and the Publisher shall meet together, pray together, and purpose to be reconciled....

(2) The Licensor and the Publisher shall invite other witnesses, who may have knowledge of the actual facts of the dispute or whose knowledge would be helpful in resolving the dispute, to meet together with both parties, to pray together, and to purpose to be reconciled....

(3) Both the Licensor and the Publisher shall each appoint one person as a Mediator; these two persons chosen shall then appoint a third Mediator. The three Mediators shall together determine the process of mediation, to which the Licensor and the Publisher agree to comply, and shall be free to act as Arbitrators, to whose authority the Licensor and the Publisher agree to submit. The three Mediators shall also determine to what degree the Licensor and the Publisher shall be liable for all costs related to the mediation process.

J.A. 18.[1]

### B.

On August 10, 1994, Performance filed a complaint in district court, asserting a claim of breach of contract based upon Questar's refusal to pay accrued royalties due and owing to Performance pursuant to the licensing agreement between the parties and seeking a declaration of the parties' rights under the agreement. At the same time that it filed its complaint, Performance filed a motion for a preliminary injunction, seeking to enjoin Questar from refusing to pay the royalties due and owing to Performance under the license agreement and directing that Questar pay the royalties to Performance as provided in the agreement. Questar filed a brief in opposition to the motion for a preliminary injunction on August 24, 1994.

Pursuant to the agreement of the parties, the motion for a preliminary injunction was submitted to the district court based upon the documentary evidence in the record. Oral argument on the motion was held before the district court on August 25, 1994; however, the parties presented no testimonial evidence to the district court at that time.

On September 2, 1992, the district court denied Performance's motion for a preliminary injunction. Specifically, in denying Performance's motion, the district court found that it need not address the issue of whether Performance was likely to succeed on the merits of its claim that Questar breached the license agreement, "because the agreement has a mandatory arbitration provision." J.A. 26. The district court further concluded that

it should not involve itself in the merits of a dispute when the parties, in their agreement, have clearly provided that arbitration is the sole and exclusive means to remedy disputes.

.　　.　　.　　.　　.

In summary, the Court does not feel that Performance is likely to succeed on the

merits given the mandatory arbitration provision in the agreement.

J.A. 27–28.

Furthermore, the district court stated that while it

realize[d] that the royalties [provided for in the licensing agreement] are necessary for the operation of Performance's business, . . . . because Performance has come to the Court with "unclean hands," the Court concludes it should not grant Performance's request for equitable relief even though Performance's business might suffer irreparable harm.

J.A. 28–29. This timely appeal followed.[2]

### II.

### A.

Performance argues that the district court erred in finding that it could not issue injunctive relief because of the mandatory mediation/arbitration provision in the agreement between the parties. Performance asserts that the district court's refusal to grant injunctive relief because of the mandatory arbitration provision is contrary to the rule adopted by the majority of the United States Circuit Courts of Appeals. Performance further asserts that injunctive relief is appropriate in this case to preserve the status quo pending the arbitration of the parties' dispute, because absent injunctive relief Performance will suffer irreparable harm; namely, the collapse of its business, which will render the process of arbitration a hollow and meaningless formality.

In its opinion, the district court acknowledged that this issue was one of first impression in the Sixth Circuit. The district court further acknowledged that a number of other Circuits have held that district courts may issue injunctive relief under appropriate circumstances pending arbitration. Nevertheless, the district court rejected that approach, concluding instead "that it should not involve itself in the merits of a dispute when the parties, in their agreement, have clearly

---

1. In its opinion, the district court found that the dispute resolution provision in the license agreement was a "clear and unambiguous . . . mandatory arbitration provision." J.A. 26. Neither party challenges this finding on appeal.

2. On October 6, 1994, Performance filed a motion for an expedited appeal with this court, which was granted on October 11, 1994.

provided that arbitration is the sole and exclusive means to remedy disputes." J.A. 27–18.

We begin our analysis by noting that this court stated long ago that

"[t]he object and purpose of a preliminary injunction is to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined.... The legal discretion of the judge or court in acting upon applications for provisional injunctions is largely controlled by the consideration that the injury to the moving party, arising from a refusal of the writ, is certain and great, while the damage to the party complained of, by the issuance of the injunction, is slight or inconsiderable.' "

*American Fed'n of Musicians v. Stein,* 213 F.2d 679, 682 (6th Cir.) (quoting *Blount v. Societe Anonyme du Filtre Chamberland Systeme Pasteur,* 53 F. 98, 101 (6th Cir. 1892)), *cert. denied,* 348 U.S. 873, 75 S.Ct. 108, 99 L.Ed. 687 (1954).

■ Our duty in reviewing a district court's order denying a preliminary injunction is limited to determining if the district court abused its discretion in denying preliminary relief. *Gaston Drugs, Inc. v. Metropolitan Life Ins. Co.,* 823 F.2d 984, 988 (6th Cir.1987) (per curiam). " 'A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.' " *Id.* (quoting *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.,* 753 F.2d 1354, 1356 (6th Cir.), *cert. dismissed,* 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985)). "This court reviews the [district court's] findings of fact under the clearly erroneous standard: legal conclusions are given de novo review. '[A] factual or legal error may alone be sufficient to establish that the court "abused its discretion" in making its final determination....' " *N.A.A.C.P. v. City of Mansfield, Ohio,* 866 F.2d 162, 166 (6th Cir.1989) (quoting *Baja Contractors, Inc. v. City of Chicago,* 830 F.2d 667, 674 (7th Cir.1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988)).

The issue of whether a district court has subject matter jurisdiction to entertain a motion for preliminary injunctive relief in an arbitrable dispute is an issue of first impression in this circuit. Moreover, the issue of "[w]hether the Arbitration Act deprives the district court of subject matter jurisdiction to enter preliminary injunctive relief is an issue of law subject to plenary review." *Ortho Pharmaceutical Corp. v. Amgen, Inc.,* 882 F.2d 806, 812 n. 6 (3d Cir.1989).

"The Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1976), makes enforceable an agreement to arbitrate." *Guinness–Harp Corp. v. Jos. Schlitz Brewing Co.,* 613 F.2d 468, 472 (2d Cir.1980) (citing 9 U.S.C. § 4 and *Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.,* 348 F.2d 693, 696 (2d Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966)). "Federal law applies to enforcement of a duty to arbitrate, whenever interstate commerce is involved," *id.,* as is the situation in this case. "Thus, the principle issue on appeal is whether § 3 of the Federal Arbitration Act, 9 U.S.C. § 3 (1982), absolutely precludes a district court from granting one party a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1050 (4th Cir.1985).

The starting point for this inquiry is 9 U.S.C. § 3, which provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Although we have not had occasion to interpret the meaning of § 3, a number of other Circuits have done so. In *Bradley,* the Fourth Circuit stated:

Section 3 does not contain a clear command abrogating the equitable power of

district courts to enter preliminary injunctions to preserve the status quo pending arbitration. Instead, § 3 states only that the court shall stay the "trial of the action"; it does not mention preliminary injunctions or other pre-trial proceedings. Certainly Congress knows how to draft a statute which addresses all actions within the judicial power. Furthermore, nothing in the statute's legislative history suggests that the word "trial" should be given a meaning other than its common and ordinary usage: the ultimate resolution of the dispute on the merits. See Senate Rep. No. 536, 68th Cong. 1st Sess. (1924); H.R.Rep. No. 96, 68th Congress, 1st Sess. (1924).

*Bradley,* 756 F.2d at 1052 (footnote omitted). Based upon its analysis of § 3, the Fourth Circuit held

> that where a dispute is subject to mandatory arbitration under the Federal Arbitration Act, a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute if the enjoined conduct would render that process a "hollow formality." The arbitration process would be a hollow formality where "the arbitral award when rendered could not return the parties substantially to the status quo ante."

*Id.* at 1053–54 (quoting *Lever Bros. Co. v. International Chemical Workers Union, Local 217,* 554 F.2d 115, 123 (4th Cir.1976)). Likewise, in *Roso–Lino Beverage Distributors Inc. v. Coca–Cola Bottling Co. of New York,* 749 F.2d 124 (2d Cir.1984) (per curiam), the Second Circuit held that "[t]he fact that a dispute is to be arbitrated, however, does not absolve the court of its obligation to consider the merits of a requested preliminary injunction; the proper course is to determine whether the dispute is a 'proper case' for an injunction." *Id.* at 125. Furthermore, in *Sauer–Getriebe KG v. White Hydraulics, Inc.,* 715 F.2d 348 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984), the Seventh Circuit held

that it was error for the district court not to grant injunctive relief pending arbitration of a matter where the plaintiff satisfied the four factors necessary for the grant of a preliminary injunction. *Id.* at 350–52.

However, in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286 (8th Cir.1984), the Eighth Circuit, relying on three decisions of the Supreme Court, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); and *Buffalo Forge Co. v. United Steelworkers of America,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976),[3] held that the grant of injunctive relief in an arbitrable controversy "abrogates the intent of the Federal Arbitration Act and consequently was an abuse of discretion." *Hovey,* 726 F.2d at 1291. The Eighth Circuit reasoned that the "congressional intent revealed in the Arbitration Act [which was] to facilitate quick, expeditious arbitration," would be thwarted because "the judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator." *Id.* at 1291–92.

Subsequently, in *Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43 (1st Cir.1986), the First Circuit thoroughly analyzed the three Supreme Court decisions relied on by the Eighth Circuit in *Hovey* and rejected the position taken by the Eighth Circuit. In *Teradyne,* the First Circuit stated that as a result of its review of the three Supreme Court decisions relied on in *Hovey,* it saw "nothing in the Supreme Court's reasoning to indicate that the Court would be opposed to the issuance of an order designed to preserve the meaningfulness of an arbitration agreement." *Id.* at 50. The First Circuit further stated that it saw "no incompatibility between the Court's language and the availability of preliminary injunctive relief to preserve the meaningfulness of the arbitration process. The risk that the arbitrator will be unduly influenced by the court's prior ruling

---

**3.** None of the three Supreme Court decisions relied on by the Eighth Circuit in *Hovey* dealt

with the issue presented here.

is offset by the necessity of preserving the status quo." *Id.* Consequently, the First Circuit held:

> Having thus outlined our disagreement with both the reasoning and approach of the Eighth Circuit, we are persuaded that the approach taken by the Second, Fourth and Seventh Circuits should be followed. We hold, therefore, that a district court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for injunctive relief are satisfied. We believe this approach reinforces rather than detracts from the policy of the Arbitration Act, which was most recently described by the Supreme Court in *Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985): "passage of the Act was motivated first and foremost by a Congressional desire to enforce [arbitration] agreements into which parties had entered." 470 U.S. at 220, 105 S.Ct. at 1242. We believe that the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, ipso facto, the meaningfulness of the arbitration process. Accordingly, we hold that it was not error for the district court to issue the preliminary injunction before ruling on the arbitrability of this dispute.

*Id.* at 51 (footnote omitted).

Thereafter, in *Ortho Pharmaceutical Corp. v. Amgen, Inc.,* 882 F.2d 806 (3d Cir.1989), the Third Circuit held, relying on the reasoning of the First, Second, Fourth, and Seventh Circuits, "that a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied." *Id.* at 812.[4] Finally, in *PMS Distrib. Co. v. Huber & Suhner, A.G.,* 863 F.2d 639 (9th Cir.1988), the Ninth Circuit, relying on the decision of the Seventh Circuit in *Sauer–Getriebe;* the decision of the Second Circuit in *Roso–Lino;* and the decision of the First Circuit in *Teradyne,* held that "[t]he fact that a dispute is arbitrable and that the court so orders under Section 4 of the Arbitration Act, 9 U.S.C. § 4, does not strip it of authority to grant a writ of possession pending the outcome of the arbitration so long as the criteria for such a writ are met."[5] *PMS Distributing,* 863 F.2d at 642.

■■■ After a thorough review of the relevant case law, we adopt the reasoning of the First, Second, Third, Fourth, Seventh, and arguably the Ninth, Circuits and hold that in a dispute subject to mandatory arbitration under the Federal Arbitration Act, a district court has subject matter jurisdiction under § 3 of the Act to grant preliminary injunctive relief provided that the party seeking the relief satisfies the four criteria which are prerequisites to the grant of such relief. We further conclude that a grant of preliminary injunctive relief pending arbitration is particularly appropriate and furthers the Congressional purpose behind the Federal Arbitration Act, where the withholding of injunctive relief would render the process of arbitration meaningless or a hollow formality because an arbitral award, at the time it was rendered, " 'could not return the parties substantially to the status quo ante.' " *Bradley,* 756 F.2d at 1053 (quoting *Lever Bros. Co. v. International Chemical Workers Union, Local 217,* 554 F.2d 115, 123 (4th Cir.1976)).

■■■ Accordingly, we hold that the district court erred as a matter of law when it found that it could not enter preliminary injunctive relief in this case because the dispute between the parties was the subject of mandatory arbitration.

### B.

■■■ Performance next argues that the district court erred in finding that it did not

---

4. Furthermore, the Third Circuit not only rejected the position of the Eighth Circuit in *Hovey,* it also noted that in *Ferry–Morse Seed Co. v. Food Corn, Inc.,* 729 F.2d 589 (8th Cir.1984), which was decided two months after *Hovey,* another panel of the Eighth Circuit affirmed the grant of a preliminary injunction in an arbitrable dispute.

5. The issue in *PMS Distributing* arose pursuant to § 4 of the Arbitration Act as opposed to § 3 of the Act. However, we believe that the fact that the Ninth Circuit relied on and adopted the reasoning of cases from other Circuits which were decided pursuant to § 3 is some indication, if not a strong indication, that the Ninth Circuit would decide the issue in the same way.

satisfy the four factors necessary for the grant of a preliminary injunction. The four factors are: (1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served. *International Longshoremen's Ass'n, AFL–CIO, Local Union No.1937 v. Norfolk S. Corp.,* 927 F.2d 900, 903 (6th Cir.), *cert. denied,* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 38 (1991) (citing *In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985)). "A district court is required to make specific findings concerning each of the four factors, unless fewer are dispositive of the issue." *Id.* Moreover, the four factors are not prerequisites to be met, but rather must be balanced as part of a decision to grant or deny injunctive relief. *In re DeLorean,* 755 F.2d at 1229.

■ As was noted above, our review of this issue is limited to determining if the district court abused its discretion in denying preliminary relief. *Gaston Drugs,* 823 F.2d at 988. " 'A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.' " *Id.* (quoting *Christian Schmidt Brewing Co,* 753 F.2d at 1356). We review the district court's factual findings under a clearly erroneous standard, and its legal conclusions de novo. *City of Mansfield,* 866 F.2d at 166. Furthermore, in a case such a this, where "the district court's decision was made on the basis of a paper record, without a evidentiary hearing, we are in as good a position as the district judge to determine the propriety of granting a preliminary injunction." *Roso–Lino,* 749 F.2d at 125.

■ First, Performance argues that it has established that it would suffer irreparable injury in the absence of injunctive relief; namely, that it has shown that in the absence of royalty payments from Questar, its business would be destroyed or driven into insol-

vency. Performance further argues that this irreparable injury is the type of irreparable injury which would render the arbitration process either meaningless or a hollow formality because a decision from the arbitrator ordering Questar to pay the accrued royalties from *The Beginner's Bible* to Performance could not return Performance to the status quo ante if its business were destroyed.

In that regard, the record contains the affidavit of Jerry Wise, Performance's president dated August 9, 1994, in which Wise states that "[t]he license agreement between Performance Unlimited and Questar is by far the single most significant royalty-producing license agreement that Performance Unlimited has, and royalties received from the license constitute the single largest amount of royalty income received by Performance Unlimited yearly." J.A. 38. Wise further stated that "[i]f Questar does not pay its accrued royalties, Performance Unlimited will not be able to meet payroll, pay federal withholding taxes, pay vendors, pay royalties owed to licensees, or indeed continue to operate more than another two to three weeks." J.A. 40. The record also contains the affidavit of Richard Hilicki, Performance's Vice President of Finance, dated August 9, 1994, in which Hilicki stated that the accrued royalties of $184,000 that Questar had declined to pay to Performance, "constitute[d] in excess of 60% of the total projected revenues of Performance Unlimited for the second half of 1994." J.A. 42. Hilicki also stated that "[b]ecause of Questar's refusal to pay its royalties, Performance Unlimited has been unable to pay many of its vendors in a timely fashion ..." and that "Performance Unlimited will be unable to secure additional supplies and materials from its vendors." J.A. 43. Finally, Hilicki stated that Questar was holding approximately $45,000 in accrued royalties in addition to the $184,000 which it had deposited into the escrow account, and that royalties on *The Beginner's Bible* were accruing at a rate of about $30,000 to $35,000 per month. J.A. 44.[6]

---

**6.** The record also contains supplemental declarations from Wise and Hilicki which were filed with the district court on August 25, 1994. Hilicki states that "Prior to the time that Questar Publishers, Inc. unilaterally determined that it

would not pay royalties due to Performance Unlimited, we were not in any financial difficulty. The financial crisis in which Performance Unlimited finds itself is wholly a result of Questar's withholding of royalties." J.A. 55–56. However,

Although Questar asserts that Performance's claims of irreparable injury are pretextual, the statements of Wise and Hilicki are the only evidence of record concerning the financial condition of Performance. Accordingly, we conclude that the uncontradicted statements of Wise and Hilicki dated August 4, 1994 establish that in the absence of injunctive relief, i.e., without the payment of royalties by Questar, Performance will be unable to operate its business and the business will suffer economic collapse or insolvency.

Moreover, the district court acknowledged as much in its opinion when it stated:

> Performance notes that the $184,000 in royalties is its largest source of revenue and without the royalties, in cannot continue to operate its business.

> .    .    .    .    .

> the Court realizes that the royalties are necessary for the operation of Performance's business ...

J.A. 28.

The impending loss or financial ruin of Performance's business constitutes irreparable injury. "An injury is irreparable if it cannot be undone through monetary remedies." *Interox Am. v. PPG, Indus., Inc.*, 736 F.2d 194, 202 (5th Cir.1984). "As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm. Yet, irreparable injury has been characterized as loss of a movant's enterprise." *Ryko Mfg. Corp. v. Delta Servs., Inc.*, 625 F.Supp. 1247, 1248 (S.D. Iowa 1985) (citation omitted). *See also Roso–Lino*, 749 F.2d at 125–26 ("The loss of [plaintiff's] distributor-

ship, an ongoing business ... constitutes irreparable harm. What plaintiff stands to lose cannot be fully compensated by subsequent money damages.").

Furthermore, the type of irreparable harm which Performance is likely to suffer, the loss of its business, is precisely the type of harm which necessitates the granting of preliminary injunctive relief pending arbitration, because the arbitration will be a meaningless or hollow formality unless the status quo is preserved pending arbitration.[7] "The Supreme Court has held that a preliminary injunction, designed to freeze the status quo and protect the damages remedy is an appropriate form of relief when it is shown that the defendant is likely to be insolvent at the time of judgement." *Teradyne*, 797 F.2d at 52 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940)). *See Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir.1989), *cert. denied*, 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990):

> [Defendant] directs our attention to cases holding that a preliminary injunction is an inappropriate remedy where the potential harm to the movant is strictly financial. This is true as a general rule but an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business. See Wright and Miller, Federal Practice and Procedure: Civil § 2948, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (threat of bankruptcy constitutes irreparable harm); *National Screen Service Corp. v. Poster Exchange, Inc.*, 305 F.2d

---

neither Hilicki's nor Wise's supplemental declarations are signed or dated.

7. Questar argues, citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir.1993), *rev'd on other grounds*, —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), that it has not breached its license agreement with Performance because it has paid the royalties due under the license agreement into an escrow account. However, this argument is beside the point. The key issue in this case is whether or not Performance will collapse, i.e., suffer irreparable harm, in the absence of royalty payments from Questar. The record shows that Performance is likely to suffer

financial collapse in the absence of the royalty payments. Furthermore, although Questar has deposited the royalties into an escrow account, the royalties have not been paid over to Performance and the mere existence of the escrow account will not save Performance from financial ruin. Thus, even were we to determine that Questar had not breached its license agreement with Performance by virtue of paying the royalties due under the license agreement into an escrow account, this determination would have no impact upon our determination that Performance would suffer irreparable injury without the royalty payments.

647 (5th Cir.1962) (no abuse of discretion where denial of injunctive relief would result in the destruction of movant's business), *John B. Hull, Inc. v. Waterbury Petroleum*, 588 F.2d 24 (2d Cir.1978), *cert. denied*, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979) (possibility of going out of business is irreparable harm); *Tri–State Generation v. Shoshone River Power, Inc.*, 805 F.2d 351 (10th Cir.1986) (threat to trade or business viability is irreparable harm).

*See also Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir.1978) ("We believe the record in this case supports the decision of the district court to grant a preliminary injunction.... [T]he plaintiff introduced proof of such severe financial hardship that, upon finding the requisite likelihood of success, the court could reasonably conclude that delay in granting interlocutory relief would render a later judgment on the merits meaningless. Under [plaintiff's] proof he would have been completely 'wiped out' long before a final decision could be expected. The district court did not abuse its discretion....").

■ Second, Performance argues that the district court erred in finding that Performance was not entitled to equitable relief because Performance had "unclean hands." The district court stated that it

> realizes that the royalties are necessary for the operation of Performance's business, [but was] ... concerned that Performance has come to it for equitable relief with unclean hands.

J.A. 28. The district court then stated the reasons why it believed that Performance had unclean hands:

> First, there appears to be an ongoing dispute between Performance and Mr. Leininger, in that Leininger has made claims to Performance for unpaid royalties. Thus, there is a possibility that Performance has breached its license agreement with Leininger. Second, there is also the possibility that Performance has breached their sublicense agreement with Questar by allowing a third party publisher, David C. Cook Company, to publish *The Beginner's Bible [Curriculum]*, even though Questar has exclusive publishing rights under the

agreement. Finally, there are other claims on the very same royalties Performance seeks. Of the $184,000, Mr. Leininger is due approximately $4,300 and the Henleys, writers of the *Dovetales* stories, are due $79,000.

J.A. 28–29.

■ "Ordinarily, an abuse of discretion standard applies to ... review of a district court's application of the unclean hands doctrine." *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342, 1354 (3d Cir.), *cert. denied*, 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989). "The concept of unclean hands may be employed by a court to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Novus Franchising, Inc. v. Taylor*, 795 F.Supp. 122, 126 (M.D. Pa.1992). The doctrine of unclean hands requires that the alleged misconduct on the part of the plaintiff relate directly to the transaction about which the plaintiff has made a complaint. *Dollar Systems, Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir.1989). "Thus, the doctrine is to be applied 'only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.'" *McMonagle*, 868 F.2d at 1354 (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245–46, 54 S.Ct. 146, 147–48, 78 L.Ed. 293 (1933)). "[T]he unclean hands doctrine can be applied only to conduct relating to the matter in litigation." *Id.* at 1355. Finally, "the doctrine is not to be used as a loose cannon, depriving a plaintiff of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct." *American Hosp. Supply Corp. v. Hospital Products, Ltd.*, 780 F.2d 589, 601 (7th Cir.1986).

In this case, there is no evidence of record that Performance is guilty of any misconduct that rises to the level of fraud, deceit, unconscionability, or bad faith. The disputes between Performance and Questar, and Performance and Leininger are bona fide commercial disputes. The dispute between Perfor-

mance and Questar centers around the issue of whether Performance could license David C. Cook Publishers to publish *The Beginner's Bible New Testament* as part of its *The Beginner's Bible Curriculum*. Further, the dispute between Performance and Leininger centers around the question as to whether Performance could deduct legal fees from its royalty payments to Leininger. In this case, the district court made no findings as to the merits of the disputes between Performance and Questar and Performance and Leininger. Thus, the district court found that Performance had unclean hands based upon nothing more than the "possibility" that the arbitrator could determine that Performance had breached its license agreement with Questar, or that Performance had breached its license agreement with Leininger, or that Performance had breached both license agreements. This is not the required finding that Performance's actions rose to the level of fraud, deceit, unconscionability, or bad faith.

Furthermore, it is undisputed between the parties that out of the approximately $185,000 in royalty payments which are due to Performance, approximately $4,300 is due to be paid to Leininger and $79,000 is due to be paid to Karyn Henley. However, the district court cannot find that Performance has unclean hands because it has not been able to pay to Henley and Leininger moneys that Questar has refused to pay over to it. Accordingly, we conclude that the district court abused its discretion when it applied the doctrine of unclean hands to bar equitable relief, namely, the grant of a preliminary injunction to Performance.

■ Third, Performance argues that the district court erred in finding that the public interest would be served by denying Performance's motion for injunctive relief. The district court stated that it

> finds that public policy dictates that the arbitration provision in the agreement between Performance and Questar be enforced. The agreement provides for arbitration and explicitly states that the parties shall not bring their disputes to "secular courts." The parties should work out their disputes as provided in the agreement they both freely signed.

J.A. 29. However, we believe that in this case the public interest would be served by granting injunctive relief to Performance "because there is a strong policy in favor of carrying out commercial arbitration when a contract contains an arbitration clause. Arbitration lightens courts' workloads, and it usually results in a speedier resolution of controversies." *Sauer–Getriebe*, 715 F.2d at 352. As was discussed above, we believe that in the absence of injunctive relief, Performance faces its destruction as an ongoing enterprise, and, consequently, without injunctive relief, the arbitration process agreed to by Performance and Questar in their licensing agreement will become a hollow formality. In light of the strong public policy encouraging parties in commercial disputes to submit their disagreements to the speedier resolution of arbitration where the parties have agreed to a contract containing an arbitration clause, we believe that preliminary injunctive relief is in the public interest in this case. Performance and Questar agreed to a contract containing an arbitration clause; however, in the absence of preliminary injunctive relief Performance may well lose its business. Thus, were we to reach the same conclusion as did the district court, private commercial parties will have little incentive to agree to contracts containing provisions for arbitration of their disputes, if by agreeing to arbitration of their disputes they are unable to obtain injunctive relief even when *they face destruction*. Therefore, the district court's finding that the denial of preliminary injunctive relief in this case would serve the public interest is clearly erroneous. Rather, the public interest is best served by the granting of preliminary injunctive relief in this case because it will foster agreements to arbitrate as a means of resolving disputes between private parties.

■ Fourth, Performance argues that the district court erred in finding that others, particularly Questar, would be harmed by the grant of preliminary injunctive relief. The district court found that

> [i]f the Court were to grant the preliminary injunction, and Performance still does not rectify the outstanding dispute with Leininger, then Leininger could terminate

his license agreement with Performance. As a consequence, Questar's sublicense with Performance would be void. On the other hand, if the Court were to deny the preliminary injunction, and the parties continue to refuse to submit their disputes to arbitration, as provided in their agreement, then Performance will likely be forced to close its doors. As a consequence, Questar's sublicense with Performance would still be void.

J.A. 30.

We conclude that the district court's finding that Questar would be harmed by the grant of injunctive relief is clearly erroneous. The evidence shows that in the absence of injunctive relief Performance will likely collapse, thereby voiding the license agreement between Performance and Questar.

However, the district court concluded that if Performance does not rectify its dispute with Leininger, Leininger could terminate his licensing agreement with Performance, thereby also voiding Performance's license agreement with Questar. Performance and Leininger have disagreed as to whether Performance could properly deduct legal fees from its royalty payments to Leininger. However, "a bona fide dispute concerning royalty payments does not, as a matter of law, establish a material breach justifying recision of the contract absent an express provision in the contract." *Arthur Guinness & Sons, PLC v. Sterling Pub. Co.,* 732 F.2d 1095, 1101 (2d Cir.1984). Thus, it is not at all clear that the dispute between Performance and Leininger will result in the recision of the licensing agreement between Performance and Leininger. Furthermore, there is no indication in the record that Leininger has sought arbitration or has filed a lawsuit against Performance over their dispute, much less any evidence that Leininger

has sought to terminate his license agreement with Performance.[8] Thus, the evidence shows that Questar is likely to suffer harm in the absence of preliminary injunctive relief, regardless of the outcome of the dispute between Performance and Leininger.

Finally, Performance argues that the district court erred in finding that it had little likelihood of success on the merits. As noted above, the district court concluded that it would not address the issue of the likelihood of Performance's success on the merits because this is an arbitrable dispute. The district court then stated that it did "not feel that Performance [was] likely to succeed on the merits given the mandatory arbitration provision in the agreement." J.A. 28.

" '[W]e do not consider the merits of [a] case further than to determine whether the District Judge abused his discretion in denying the preliminary injunction.' " *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977) (quoting *Adams v. Federal Express Corp.,* 547 F.2d 319, 323 (6th Cir.1976), *cert. denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977)). Moreover, "it is improper for a court to decide a contractual dispute relegated to arbitration." *Sauer–Getriebe,* 715 F.2d at 352. Nevertheless, Performance "has demonstrated enough probable success on the merits to warrant relief." *Id.*

In balancing the four factors for injunctive relief, "[t]he moving party must show a strong likelihood of success on the merits if all other factors militate against granting a preliminary injunction. Similarly, the moving party need show less likelihood of success on the merits if the other facts indicate that the Court should issue a preliminary injunction." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Grall,* 836 F.Supp.

---

8. Leininger's counsel filed a response on behalf of Leininger with the district court on September 1, 1994, as apparently requested by the district court. J.A. 116. In the letter, counsel stated that "Mr. Leininger has requested an audit of the books of Performance Unlimited and has made claims to Performance Unlimited for unpaid royalties which he believes he is owed. Mr. Leininger also has requested a declaratory judgment in the United States District Court for the Western District of Texas, Civil Action No. SA–93–CA–

0381, declaring that the agreement between Questar and Performance is terminated because Questar has breached the conditions of Mr. Leininger's consent for Performance Unlimited and Questar to enter into their agreement." Brief of Appellees at Addendum. In his letter, Leininger's counsel further stated that "Questar has always known that its agreement with Performance Unlimited was subject to being terminated if the agreements between Mr. Leininger and Questar were terminated." *Id.*

428, 432 (W.D. Mich.1993) (citing *In re DeLorean,* 755 F.2d at 1229)). As was discussed above, the other three factors in this case weigh strongly in favor of granting the preliminary injunction requested by Performance. Thus, Performance need show less likelihood of success on the merits to obtain injunctive relief.

In this case it is undisputed that if the arbitrator finds that Performance has not breached the license agreement with Questar, Performance is entitled to the entire amount of money which Questar has placed in escrow. Further, the evidence shows that Questar has placed a substantial amount of money, approximately $185,000 in escrow, and that additional royalties due and owing to Performance under the license agreement are accruing at a significant rate, approximately $30,000 to $35,000 monthly. Thus, even if the arbitrator determines that Performance has breached the contract and awards damages to Questar, given the amount of royalties in escrow, there is every likelihood that Performance will be entitled to at least some portion of the royalties being held in escrow. Consequently, because Performance will, as the result of the arbitration, most likely receive some portion, if not all, of the funds in the escrow account, Performance has a likelihood of success on the merits.

Furthermore, we believe that the district court can, and must, tailor any injunctive relief it grants in this case both to preserve Performance as an ongoing enterprise and to preserve Questar's right to damages, if any, out of the funds now held in escrow if it prevails on its claim of breach of damages. In *Grall,* the court noted that a "district court's authority to issue [preliminary] injunctive relief extends only until the arbitrators can determine the temporary injunctive relief necessary to maintain the status quo." *Grall,* 836 F.Supp. at 430 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano,* 999 F.2d 211, 215 (7th Cir.1993). "Once assembled, an arbitration panel can enter whatever temporary injunctive relief it deems necessary to maintain the status quo ... '[C]ourts are ill-advised to extend the injunction once arbitration proceeds.'" *Id.* at 431 (quoting *Salvano,* 999 F.2d at 215)).

Likewise, because the ultimate decision on the merits of this contractual dispute is for the arbitrators, the district court in its grant of preliminary injunctive relief should order Questar to pay only that amount of royalties necessary to ensure that Performance is not driven out of business prior to the time the arbitration proceeds. Furthermore, once the arbitration begins, it is for the arbitrators to decide how to maintain the status quo during the pendency of the arbitration process. This approach will both minimize the district court's involvement in the merits of this contractual dispute, and it will preserve the ability of the arbitration panel to fully address the merits of the dispute.

Accordingly, we hold that the district court erred in denying Performance's motion for a preliminary injunction. Therefore, the district court should grant preliminary injunctive relief to Performance pending arbitration within the parameters we have discussed above.

### III.

For the reasons stated, the district court's judgment denying Performance's motion for a preliminary injunction is REVERSED and the case is REMANDED to the district court for the issuance of a preliminary injunction consistent with this opinion.