Yushak v. Valley Reg. Hosp.          CV-95-523-JD  11/08/95

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Michael W. Yushak, M.D.

     v.                                Civil No. 95-523-JD

Valley Regional Hospital, et al.


                            O R D E R


     The plaintiff, Michael W. Yushak, has brought this contract

action against the defendant, Valley Regional Hospital,

Claremont, New Hampshire, its president, Donald Holl, and the

president of its medical staff, Roy Barnes.  Before the court is

the plaintiff's motion for a preliminary injunction (document no.

8).


                           Background

     Dr. Yushak, an obstetrician/gynecologist, has enjoyed

hospital privileges at Valley Regional Hospital since 1981.

     On February 2, 1994, Dr. Yushak performed an emergency

hysterectomy on a patient following a cesarian section (case no.

076429).  On October 24, 1994, Dr. Yushak again delivered a child

following a cesarean section (case no. 061564).  Both cases

resulted in the filing of a notice of corrective action against

Dr. Yushak pursuant to section 4.09-1 of the hospital's by-laws.

Following the professional review action, a hearing was scheduled

under the "Fair Hearing Plan" of section 4.10 to determine whether Dr. Yushak's privileges to perform certain complex or serious obstetrical procedures, known as Category III procedures, should be suspended or revoked. However, on May 5, 1995, a few days prior to the scheduled hearing date, Dr. Yushak and the hospital administration settled their dispute by agreement. The agreement provided, inter alia, that Dr. Yushak would surrender his Category III privileges and successfully complete an approved "mini-fellowship" in high-risk obstetrics at the Dartmouth-Hitchcock Medical Center, Lebanon, New Hampshire. The parties further agreed that upon satisfaction of these and other requirements, Dr. Yushak would be permitted to re-apply for his surrendered privileges under the "Reappointment and Annual Review Process" provisions of section 4.07. On August 17, 1995, the hospital's Board of Trustees approved Dr. Yushak's re-application for Category III privileges.

On October 6, 1995, a pregnant patient of Dr. Yushak's was admitted to Valley (case no. 1712). The following morning Dr. Yushak assisted the patient in a breech delivery. The parties agree that this delivery, although ultimately completed without

2

harm to either mother or child, presented various medical complications.[1]

On October 17, 1995, Dr. Barnes, the president of the medical staff, verbally informed Dr. Yushak that his Category III privileges were suspended. In an October 18, 1995, letter Mr. Holl notified Dr. Yushak of the suspension, indicated that it was effected under section 4.09-2 of the by-laws, and explained that it came "as a result of an incident in the care of patients in case no. 1712, as well as a result of an incident in the care of patients in cases no. 061564 and no. 076429."

In an October 19, 1995, letter Mr. Holl notified Dr. Yushak that, following a meeting with Dr. Barnes, he had determined that "the emergency suspension should remain in effect to allow for an investigation of [the plaintiff's] Category III OB practice up to and including an incident on October 14, 1995." The letter described the administrative process available to the plaintiff as set out in section 4.10 and identified the specific medical records considered by "the body or person whose professional review action is the subject" of the proposed hearing, as well as a list of the witnesses expected to testify. A copy of both letters is attached to this order as an appendix.

_____

[1]The parties dispute the nature, extent, and cause of the complications. However, for purposes of the instant motion, the court need not resolve the apparent factual dispute.

3

The instant lawsuit and motion for a preliminary injunction followed on October 26, 1995. On November 7, 1995, the court conducted a hearing on the motion for a preliminary injunction during which it entertained legal argument and offers of proof.

## Discussion

In his motion the plaintiff requests that the court grant, inter alia,

> B. a preliminary injunction revoking the Emergency Suspension and requiring the Valley Regional Hospital to reinstate and restore Dr. Yushak's Category III Obstetrical privileges until a hearing on the permanent injunction and further requiring that the Hospital notify the National Practitioner Databank of such restoration in a manner satisfactory to the Plaintiff;
>
> C. a preliminary and permanent injunction prohibiting the defendants from suspending Dr. Yushak's privileges based on the two prior cases in violation of the May 5 Agreement; and
>
> D. a preliminary and permanent injunction prohibiting the Hospital from suspending Dr. Yushak's privileges on case 1712 without a notice of corrective action, investigation and fair hearing as required by the Hospital's by-laws.

Motion for Preliminary Injunction at 2.

"The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Properties, 48 F.3d 618, 620 (1st Cir. 1995) (citing

4

Chalk v. United States Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988); American Hosp. Ass'n v. Harris, 625 F.2d 1328, 1330 (7th Cir. 1980)). The court considers four factors when deciding whether to grant a preliminary injunction:

> (1) the likelihood of the movant's success on the merits;
>
> (2) the potential for irreparable harm to the movant;
>
> (3) a balancing of the relevant equities, i.e., the "hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld," Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); and
>
> (4) the effect on the public interest of a grant or denial of the injunction.

Legault v. Russo, 842 F. Supp. 1479, 1485 (D.N.H. 1994) (citing Gately v. Massachusetts, 2 F.3d 1221, 1224-25 (1st Cir. 1993)). Although each factor is significant, the "sine qua non of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits." Id. (quotations omitted).

The court has carefully considered the parties' legal arguments, offers of proof, and exhibits as presented in the pleadings and during the hearing. The court will address each preliminary injunction factor seriatim.

5

I. Substantial Likelihood of Success of Merits

The court finds that the plaintiff has not demonstrated a substantial likelihood of success on the merits. This conclusion is based on the following findings:

1) The defendants had a reasonable basis to summarily curtail Dr. Yushak's clinical privileges under the emergency suspension provisions of section 4.09-2 given the defendants' knowledge of the plaintiff's performance of high risk obstetrical procedures in cases 076429, 061564, and, more recently, in case 1712.

2) Based on the information before the court, the court cannot conclude that the defendants' conduct was either arbitrary or capricious. To the contrary, the court is satisfied that the defendants adhered to the by-law provisions governing emergency suspensions in a manner consistent with a reasonable reading of those provisions. Significantly, it is evident that the defendants narrowly tailored the emergency suspension to address their perceived concern that Dr. Yushak is incapable of properly performing the high risk procedures designated under Category III.

3) The plaintiff is entitled to, but has not availed himself of, an adequate and appropriate remedy under the "Fair Hearing Process" provisions of section 4.10. This process calls for a

judicial-type proceeding in that the plaintiff or his attorney would be entitled to call, examine, and cross-examine witnesses; present and rebut evidence; offer expert testimony; and request an official transcript.

4) Under the by-laws the defendants have no obligation at this time to conduct or offer to conduct any other type of hearing or administrative procedure beyond that available under section 4.10, if the plaintiff so requests.

## II.  Irreparable Harm

The court finds that the plaintiff has not demonstrated that he would suffer irreparable harm should the requested preliminary injunction be denied.  This conclusion is based on the following findings:

1) The plaintiff has failed to demonstrate that, should he ultimately prevail, his injury could not "be undone through monetary remedies."  Interadd of New Hampshire v. Foreign Motors, Inc., No. 94-560-SD, slip op. at 12-13 (D.N.H. October 4, 1995) (citing Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1382 (6th Cir. 1995) (quotations omitted)); see Hughes Network Sys. v. Interdigital Communications Corp., 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by an award of money damages at

7

judgment, courts generally have refused to find that harm irreparable." (citation omitted)).

2) The plaintiff may still provide his patients with a wide array of obstetric and gynecological medical services because his Category I and II privileges remain intact and are not the subject of a pending disciplinary action.

3) The plaintiff does not at this time face injury to his reputation from the alleged reporting of the emergency suspension to a national databank. Counsel for the hospital has represented that the National Practitioner Databank has not and will not be notified of the emergency suspension unless the plaintiff fails to request in writing a section 4.10 hearing by November 17, 1995. Should the plaintiff request a hearing by that date the hospital will notify the databank only if and when the section 4.10 hearing process results in a finding adverse to the plaintiff. Counsel for the hospital has further represented that he will promptly inform counsel for the plaintiff should the hospital undertake any such notification.


III. Balancing of the Relevant Equities

The court finds that, for purposes of the instant motion, the defendants' interests and potential hardships are aligned

8

with those of the general public and, thus, are properly analyzed in conjunction with the fourth factor, <u>supra</u>.

## IV. Effect on the Public Interest

The court finds that the plaintiff's significant interest in restoring his ability to practice the full range of obstetric and gynecological procedures is outweighed by the even more significant interests of the general public. This conclusion is based on the following findings:

1) The general public, particularly those expectant mothers who may require Category III procedures at Valley Regional Hospital and their families, have an extraordinarily strong interest in maintaining medically acceptable levels of physician skill and preparedness at the hospital.

2) Given the importance of maintaining a medically acceptable level of skill and preparedness, the court is unwilling to substitute its judgment for that of the medical professionals who have questioned the plaintiff's competency to perform certain high risk procedures. Specifically, at this time the court cannot and will not second-guess the sworn testimony of Dr. Barnes, which was based on his conversations with Drs. Cardozo, Zacher, and Blair, three physicians who observed the plaintiff's alleged mishandling of case 1712.

9

Based on the foregoing analysis, the court finds that the plaintiff is not entitled to a preliminary injunction.


## Conclusion

The plaintiff's motion for a preliminary injunction (document no. 8) is denied.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge

November 8, 1995

cc:  Wilbur A. Glahn, Esquire
     Bruce A. Cardello, Esquire
     Martha V. Gordon, Esquire

10