RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0251p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

NOOR JAHAN SAKHAWATI,

*Petitioner,*

*v.*

No. 15-3575

LORETTA E. LYNCH, Attorney General,

*Respondent.*

On Petition for Review from the
United States Board of Immigration Appeals
No. A098 225 911.

Decided and Filed:  October 7, 2016

Before:  GILMAN, WHITE, and STRANCH, Circuit Judges.

─────────────────

**COUNSEL**

**ON MOTION AND REPLY:**  Michael E. Piston, New York, New York, for Petitioner.  **ON RESPONSE:**  Nancy E. Friedman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────────

**ORDER**

─────────────────

RONALD LEE GILMAN, Circuit Judge.  Petitioner Noor Jahan Sakhawati has filed an Application for Attorney Fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).  Sakhawati's counsel, billing at an hourly rate of $190.28, seeks $21,248.37 in attorney fees, legal-assistance fees, and expenses for the 104.85 hours claimed to have been spent on the matter prior to the Application for Attorney Fees.  He seeks an additional $1,908.20

1

for the 10.00 hours claimed to have been spent preparing the Application and responding to the United States's Opposition.  For the reasons set forth below, we grant in part Sakhawati's Application and award a total of $15,653.76 in attorney fees, legal-assistance fees, and expenses.

## I.  DISCUSSION

The Equal Access to Justice Act of 1980 provides in pertinent part as follows:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  Among those "special circumstances" that would justify denying an award of attorney fees are "equitable considerations [that] dictate an award should not be made." H.R. Rep. No. 1418, at 11 (1980).

The United States argues that we should deny Sakhawati's Application for Attorney Fees on two grounds.  First, the government contends that Sakhawati, who allegedly lied on her initial application for asylum and in subsequent hearings after the Board of Immigration Appeals (BIA) erroneously granted the government's motion to reopen her immigration case, has "unclean hands."  Second, the government argues that Sakhawati, if entitled to any fees at all, should receive fees only for her "partial or limited success."

## A.      Unclean hands

"The doctrine of unclean hands is an equitable concept that allows a court to deny injunctive or declaratory relief when 'the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith *related to the matter at issue to the detriment of the other party.*'"  *Cyber Solutions Int'l, LLC v. Pro Mktg. Sales, Inc.*, 634 F. App'x 557, 567 (6th Cir. 2016) (emphasis added) (quoting *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995)).  To illustrate the application of this doctrine to applications for attorney fees under the EAJA, the government relies principally upon *Oguachuba v. INS*, 706 F.2d 93 (2d Cir. 1983), in its Opposition.  A noncitizen sought attorney

fees in that case for the successful litigation of a petition for a writ of habeas corpus, which secured his release from a period of detention that was solely the result of his own conniving efforts to prolong his stay in the United States. The Second Circuit observed that, "[w]hile he prevailed in his petition for a writ of habeas corpus, he would not have been incarcerated in the first place but for his notorious and repeated violations of United States immigration law." *Id.* at 99.

*Oguachuba* illustrates the fact that the doctrine of unclean hands applies most appropriately to those cases where the party applying for relief engaged in nefarious conduct *related to the matter at issue* and that *adversely affected the other party*. In *Oguachuba*, the petitioner, through his bad faith, had remained incarcerated despite the fact that he "was free to end his detention by voluntarily returning to Nigeria." *Id.* He thus benefitted from his own bad faith, and equitable relief in the form of attorney fees was therefore denied. *Id.*

Sakhawati's case stands in contrast to *Oguachuba*. Although Sakhawati might have engaged in fraudulent behavior in her application for asylum and in subsequent hearings, her behavior was not related to "the matter at issue" on appeal. *See Performance Unlimited*, 52 F.3d at 1383. The matter at issue was instead the government's motion to reopen that the BIA improperly granted. Nor did Sakhawati's behavior act "to the detriment" of the United States, *id.*, because her behavior was unrelated to the government's failure to utilize the evidence in its possession at her initial asylum hearing. *See Sakhawati v. Lynch*, 823 F.3d 852, 858–59 (6th Cir. 2016). Consequently, Sakhawati does not have "unclean hands" in the equitable sense that would justify the denial of attorney fees.

This is not to say that Sakhawati's conduct in this case is blameless. Nevertheless, "the special circumstances exception [does not] authorize[] denial of counsel fees under the EAJA any time a 'bad guy' litigant has defeated the government in a lawsuit." *Taylor v. United States*, 815 F.2d 249, 254 (3d Cir. 1987) (Becker, J., concurring). Rather, the exception focuses on situations where a litigant "undertook *affirmative activity* that took advantage of the very government misconduct . . . later challenged in court." *Id.* (emphasis in original). The government might well be correct that Sakhawati is a "bad person" litigant in the colloquial sense of the term, but her alleged misconduct did not affirmatively seek to take advantage of the

government's action challenged in her appeal—namely, the decision to seek, and the BIA's decision to grant, a motion to reopen her asylum case.

**B.      Apportionment of fees**

The government next contends that Sakhawati's fee request, if granted at all, should be reduced by two-thirds to account for the fact that we declined to address in our Opinion the arguments raised in the last three pages of her brief.  In support of its request, the government cites *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), for the proposition that Sakhawati may not recover attorney fees for any claim upon which she did not prevail.  The government quotes a very limited portion of the opinion on which it relies, however, and not the rest of the relevant passage that is most on point.  In discussing the apportionment of attorney fees under the Civil Rights Attorney's Fees Awards Act, the *Hensley* court wrote:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.  In such a suit . . . counsel's work on one claim will be unrelated to his work on another claim. . . . The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
>
> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency.  Many civil rights cases will present only a single claim.  In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. . . . Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the . . . court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation . . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.

*Id.* at 434–35 (citations, footnotes, and internal quotation marks omitted).

We take the essence of *Hensley* to be that where claims are unrelated to one another—a circumstance "unlikely to arise with great frequency," *id.* at 435—the fee award should be reduced to reflect work done only on the claim on which the plaintiff prevailed. These are not the circumstances of the present case.

Despite the government's argument to the contrary, we are of the opinion that all of the claims that Sakhawati raised on appeal were sufficiently related so as to avoid any need to apportion her attorney fees. They all pertained to a "common core of facts," *id.* at 435; namely, Sakhawati's asylum application and related evidence. Sakhawati also "obtained excellent results" in that she obtained the most relief that she could have received, and indeed that she requested, on her appeal—the vacatur of the BIA's decision. We therefore decline the government's invitation to apportion Sakhawati's attorney fees to the single claim addressed in our previous opinion. We now turn to the appropriate amount of that fee.

## C.    Hourly rate

Having concluded that Sakhawati is entitled to attorney fees and that the fees should encompass "all hours reasonably expended on the litigation," *Hensley*, 461 U.S. at 435, we now consider both the time expended and the hourly rate that ought to apply. As to the "hours reasonably expended," Sakhawati's counsel claims a total of 114.85 hours. One could certainly quibble about some of the time entries (such as 10 hours to prepare for oral argument), but the government has elected not to do so. Nor does the total time claimed shock our conscience. In the absence of any challenge to the hours listed, we will therefore accept them as reasonable.

This leads to the question of the proper hourly rate to be applied. The EAJA provides for a statutory maximum rate of $125.00 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). "In requesting an increase in the hourly-fee rate, Plaintiff[] bear[s] the burden of producing appropriate evidence to support the requested increase." *Bryant v. Comm'n of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009). "Plaintiff[] must 'produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984)). We have previously held that the Department of Labor's Consumer Price Index alone, indicating the rate of inflation, is not enough. *Id.*

In the present case, Sakhawati has submitted no evidence to justify a greater hourly rate than the statutory maximum rate of $125.00 per hour. She simply asserts in conclusory fashion that "[a]n increase in the cost of living and special factors justify awarding a fee of $190.28." The government, on the other hand, has proffered no evidence to justify attorney fees calculated at less than the statutory maximum rate. We therefore conclude that the statutory maximum rate of $125.00 per hour is appropriate and award Sakhawati's counsel $14,356.25 in attorney fees. An additional $1,297.51 is awarded for reasonable legal-assistance fees and expenses, as requested in Sakhawati's application, for a total award of $15,653.76.

## II. CONCLUSION

For all of the reasons set forth above, we award a total of $15,653.76 in attorney fees, legal-assistance fees, and costs.