Interadd of NH v. Foreign Motors          CV-94-560-SD   10/04/95

UNITED STATES DISTRICT COURT FOR THE

                      DISTRICT OF NEW HAMPSHIRE


Interadd of New Hampshire, Inc.

          v.                                    Civil No. 94-560-SD

Foreign Motors, Inc.;
MBPA Corp.;
Herbert G. Chambers


                         O R D E R


     In this diversity action, plaintiff Interadd of New

Hampshire, Inc., seeks to recover monies it is allegedly owed

under a Consulting and Non-Competition Agreement entered into

between Interadd and defendants Foreign Motors, Inc., and MBPA

Corporation, and guaranteed by defendant Herbert G. Chambers.

     Presently before the court are (1) plaintiff's motion for an

order compelling defendants to resume making the monthly payments

as required by the Consulting and Non-Competition Agreement; (2)

defendants' motion to dismiss or stay the present action pending

arbitration; and (3) defendants' motion to join Lutz and Waltraud

Wallem as parties plaintiff should the motion to dismiss or stay

be denied.  Appropriate objections, and in many cases reply and

surreply briefs, have been accordingly interposed.

<u>Background</u>

Prior to 1986, Lutz N. Wallem and his wife Waltraud A. Wallem were the owners of Foreign Motors, Inc., an automobile dealership in Boston, Massachusetts. When a previous attempt to sell Foreign Motors proved unsuccessful,[1] the Wallems turned to defendant Chambers.[2]

On October 15, 1986, the following agreements were entered into with respect to Foreign Motors:

(1) a financing agreement under which MBPA agreed to loan $1,030,000 to Foreign Motors and to guarantee Foreign Motors' floor plan in exchange for 12½ percent of the dealership's stock;

(2) an Option to Purchase Stock Agreement (Attached to Defendants' First Motion to Dismiss or Stay as Exhibit A)[3] between the Wallems, Foreign Motors, and MBPA, under which MBPA or its designee received an option to purchase the remaining 87½ percent of Foreign Motors' stock; and

(3) an Indemnity Agreement between the Wallems, Foreign

---

[1]Mercedez-Benz, one of the four automobile franchises held by Foreign Motors, refused to approve the transfer of the franchise to Bahig Bishay, who had entered into an Asset Purchase Agreement with Foreign Motors in December 1985.

[2]Chambers in turn formed MBPA, a Massachusetts corporation, through which the subsequent transactions took place.

[3]Unless specifically identified otherwise, all exhibit references are to the exhibits submitted with defendants' November 8, 1994, motion to dismiss or stay.

Motors, and MBPA (Defendants' Exhibit B) addressing, inter alia, the parties' responsibility for any expenses and liability associated with litigation involving Bishay.

MBPA subsequently exercised its option to purchase the remaining Foreign Motors stock owned by the Wallems, and named Chambers as its approved designee to receive transfer of the stock. See Memorandum Re: Tentative, Closing and Final Book Value at 1 (Defendants' Exhibit D). The sale of stock took place on November 6, 1987. Chambers Declaration ¶ 8.

In connection with this sale, Interadd, a New Hampshire corporation formed by the Wallems, entered into a Consulting and Non-Competition Agreement with Foreign Motors and MBPA (Defendants' Exhibit E) (the Consulting Agreement). Under said agreement, Interadd was to be paid $108,000 "each year for ten years payable monthly in arrears . . . ." Consulting Agreement ¶ 4. In return, Lutz Wallem and Interadd agreed, inter alia, to provide consulting services to Foreign Motors and MBPA and not to compete with said companies over the ten-year period covered by the agreement. Id. ¶¶ 3-5.[4] Payment of the amounts due to

_____

[4]More specifically, plaintiff and Lutz Wallem agreed to refrain from engaging "directly or indirectly in the sale, service or distribution of European highline automobiles or Acuras in any capacity either individually or as an owner, partner, director, officer, employee or consultant for any person, firm or other company doing business within thirty miles in any direction of 1095 Commonwealth Avenue, Boston,

3

Interadd under the Consulting Agreement was guaranteed by Chambers. See Guaranty of Non-Competition and Confidentiality Payments (Defendants' Exhibit F).

In December 1986 Bishay filed suit against the Wallems, Foreign Motors, MBPA, and Chambers in Massachusetts Superior Court. Chambers Declaration ¶ 7. Pursuant to the terms of the Indemnity Agreement, the Wallems are obligated to indemnify MBPA for a portion of the expenses incurred by MBPA as a result of this litigation. See Indemnity Agreement ¶ 1. The Indemnity Agreement also grants MBPA and Foreign Motors the following right of offset:

> MBPA and/or the Company [Foreign Motors] shall have the right to offset any unpaid sum due under this Indemnity from the Indemnitors or either of them against the Five Thousand ($5,000.00) Dollars per week and the incentive bonus of 50% of the net operating profits otherwise due to the Indemnitors or either of them under the Wallem Employment Agreement and Wallem Consulting and Non-Competition Agreement of even date herewith, upon notice of offset to the Indemnitors.

Id. ¶ 5.

Relying on this right of offset, the defendants subsequently offset amounts that were purportedly due to them under the Indemnity Agreement against the amounts due to Interadd under the

Massachusetts." Consulting Agreement ¶ 5A. This prohibition covered customer lists and other confidential or trade secret information as well.

Consulting Agreement. The Wallems disputed both the right of the defendants to make such an offset and the amount defendants claimed to be due under the Indemnity Agreement. Wallem Affidavit ¶ 13.

In an agreement dated March 12, 1993, the parties resolved their differences as to the offset issue and as to other related issues for all payments due under the various contracts between them prior to February 18, 1993. Said agreement provides, inter alia, that,

> The parties to this Agreement hereby agree that prior to any future offsets (after February 18, 1993) by MBPA or Foreign Motors, MBPA or Foreign Motors shall notify Interadd, in writing, of its intention to offset and shall furnish Interadd with detailed backup data of the amount to be offset. Interadd shall respond within ten (10) days of receipt of said written notice and data as to any offsets that are in dispute. Upon any dispute of the propriety and/or amount of offset the parties hereby agree to submit the dispute to a single arbitrator with said procedure being set forth in paragraph (15) fifteen of the Memorandum re: Tentative, Closing and Final Book Value of November 6, 1987. The terms and conditions of paragraph (15) fifteen of Memorandum re: Tentative, Closing and Final Book Value of November 6, 1987, are hereby incorporated herein by reference.[5]

---

[5]Paragraph 15 of the November 6, 1987, Memorandum states,

> Single Arbitrator Procedure. Whenever any provision in this agreement requires arbitration before a single arbitrator, the

5

Agreement of March 12, 1993, ¶ 7 (Defendants' Exhibit G) (March Agreement).

By letter dated June 22, 1994, defendants notified Interadd and the Wallems of their intent "to offset amounts due under the Indemnity Agreement against amounts otherwise due under the November 6, 1987 Consulting and Non-Competition Agreement." Letter from Bruce H. Spatz, Vice President of The Herb Chambers Companies, to Interadd, Lutz N. Wallem, and Waltraud A. Wallem (Defendants' Exhibit H).  The Wallems have challenged the amount due to defendants under the Indemnity Agreement and maintain that the March Agreement does not allow that amount to be offset against amounts due to Interadd under the Consulting Agreement. In addition, by letter dated September 30, 1994, the Wallems requested that the dispute between the parties over the amount of indemnification be submitted to arbitration pursuant to paragraph

_____

Arbitrator shall be Wayne Shenk, currently General Manager of Foreign Motors, Inc., 1095 Commonwealth Avenue, Boston, Massachusetts. The sole remedy of the party shall be a single arbitrator proceeding, without appeal. Such arbitrator is to be totally independent, unconnected with any party hereto.  (Such proceeding is herein referred to as "arbitration by a single arbitrator").  Each party shall pay their own attorneys' fees and both parties shall share equally the cost of the single arbitrator proceeding.

Memorandum of November 6, 1987, ¶ 15 (Defendants' Exhibit D).

6

seven of the March Agreement and paragraph fifteen of the November 6, 1987, memorandum. September 30, 1994, Letter from Earl L. Kalil, Jr., counsel for the Wallems, to Bruce Spatz (Defendants' Exhibit I) (Kalil letter).


Discussion

## 1. Plaintiff's Motion for Order of Payments (document 18)

### a. Nature of the Requested Relief

By medium of the instant motion, plaintiff seeks the court's assistance in enforcing its right to payments pursuant to the Consulting Agreement. Specifically,

> the plaintiff respectfully requests that this Court issue an Order requiring the defendants to immediately pay the plaintiff the monthly amounts due under the Consulting and Non-Competition Agreement from July, 1994, when the defendant acted to unilaterally and wrongfully stop paying Interadd. In addition, the plaintiff requests that the Court Order that the defendants continue to pay Interadd the monthly amounts due under the Consulting and Non-Offset Agreement until this matter is fully and finally adjudicated.

Plaintiff's Motion for Order of Payments ¶ 6. Defendants maintain that "[a]ny disputes arising out of the offsets and any relief flowing therefrom should be decided in arbitration, in accordance with the agreement of the parties." Defendants' Objection at 4.

Defendants correctly suggest that the relief plaintiff

7

herein requests is most closely analogous to that afforded by virtue of a preliminary injunction.  Defendants' Objection at 6. See Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 47 (1st Cir. 1986) (when determining whether such relief requested is akin to injunctive relief, "[f]actors to be considered are: the present and future consequences of the constraint involved; whether the order directs or restrains conduct of one of the parties . . . ."). Accordingly, the court will consider plaintiff's motion as though it were properly raised pursuant to Rule 65, Fed. R. Civ. P.


     b.  Preliminary Injunction Standard

"The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Properties, 48 F.3d 618, 620 (1st Cir. 1995) (citing Chalk v. United States Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988); American Hosp. Ass'n v. Harris, 625 F.2d 1328, 1330 (7th Cir. 1980)).

"The court's interim injunctive decree attempts to prevent further injury by maintaining the status quo, thus enhancing the court's ability, if it ultimately finds for the movant, to

8

minimize the harmful effects of the defendant's wrongful conduct." Id. (citation omitted).

> Black letter law in this circuit instructs that district courts ordinarily are to determine the appropriateness of granting or denying a preliminary injunction on the basis of a four-part test that takes into account (1) the movant's likelihood of success on the merits, (2) the potential for irreparable injury, (3) a balancing of the relevant equities, and (4) the effect on the public interest.

Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 110 (1st Cir. 1994) (citing Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988)); see also Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir. 1995).


### (1) Likelihood of Success on the Merits

"[A]lthough a showing that plaintiff will be more severely prejudiced by a denial of the injunction than defendant would be by its grant . . . does lower the standard that must be met," 11A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2948.3, at 197 (1995), the "*sine qua non*" of the preliminary injunction test is whether the movant is likely to succeed on the merits, Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993); see also Lancor v. Lebanon Hous. Auth., 760 F.2d 361, 362 (1st Cir.

1985) ("Of these four factors, the probability-of-success component in the past has been regarded by us as critical in determining the propriety of injunctive relief.").

Appended to plaintiff's motion are the Consulting Agreement, the March Agreement, and the Kalil letter. Based upon plaintiff's understanding of the aforementioned documents, "there exists no legal right upon which the defendants may offset the payments due Interadd and Interadd should not be penalized with further and continued offsets." Plaintiff's Motion ¶ 5.

Were the only agreement at issue here the Consulting Agreement, plaintiff's position would carry substantially more weight. So long as plaintiff abided by the terms of the Consulting Agreement, the consulting fee would be paid. Failure of defendants to make payments as required, however, entitled plaintiff to request the acceleration of payments. Consulting Agreement ¶ 7.

The Consulting Agreement further provided that "This agreement may be amended only by a written agreement among the parties hereto." Id. ¶ 8. In the view of the court, the March Agreement provides such amendatory language. See infra section 2.a. Specific reference is drawn to paragraph 7 of same, which provides,

10

> The parties to this Agreement[6] hereby agree
> that prior to any future offsets (after
> February 18, 1993) by MBPA or Foreign Motors,
> MBPA or Foreign Motors shall notify Interadd,
> in writing, of its intention to offset and
> shall furnish Interadd with detailed backup
> data of the amount to be offset.

March Agreement ¶ 7. Further, the terms of paragraph 7 appear to have been both accepted and invoked when further offsets were incurred. See Kalil Letter ("Pursuant to paragraph seven of a certain Agreement, dated March 12, 1993, my clients[7] hereby request arbitration.").

The court finds and rules that plaintiff's claimed entitlement to payment, without offset, under the original terms of the Consulting Agreement is compromised by the offset dispute mechanism incorporated into the March Agreement. Regardless of who initiated the arbitral mechanism, invocation of the paragraph 7 arbitration scheme essentially suspended the economic relationship between the parties. The court is unable to say, at this juncture, that plaintiff is likely to succeed on its claim

---

[6]The parties to the March Agreement are Lutz and Waltraud Wallem, Interadd, MBPA Corp., Foreign Motors, and Herbert Chambers.

[7]Although Attorney Kalil purports to invoke the arbitration clause solely on the Wallems' behalf, the March Agreement applies equally to Interadd as a signatory to said Agreement. Cf. McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994) ("a person signing a contract only in a corporate capacity . . . does not thereby become a party to the agreement") (citations omitted).

for acceleration of payments and is thus inclined to deny the motion to compel payment of consulting fees.

(2) Irreparable Harm

Even were the court to assume arguendo that plaintiff is likely to succeed on the merits, plaintiff is unable to establish, as further required, irreparable harm.

"'An injury is irreparable if it cannot be undone through monetary remedies.'" Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1382 (6th Cir. 1995) (quoting Interox Am. v. PPG Indus., Inc., 736 F.2d 194, 202 (5th Cir. 1984)). "Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." Hughes Network Sys. v. Interdigital Communications Corp., 17 F.3d 691, 694 (4th Cir. 1994) (citation omitted).

Plaintiff asserts that due to the restrictive terms of the Consulting Agreement, see supra note 4 (terms of noncompetition), this matter is governed by the exception rather than the rule. E.g., Hughes, supra, 17 F.3d at 694 ("where the harm suffered by the plaintiff from denying the injunction is especially high in comparison to the harm suffered by the defendant from granting it," irreparable injury may be inferred); In re Estate of

12

Ferdinand Marcos Human Rights Litig., 25 F.3d 1467, 1479 (9th Cir. 1994) (damages remedy inadequate if (1) award may come too late to save plaintiff's business; (2) plaintiff unable to adequately finance litigation without such revenues; (3) defendant may become insolvent before final judgment; or (4) nature of remedy makes damages difficult to calculate), cert. denied sub nom., Estate of Marcos v. Hilao, ___ U.S. ___, 115 S. Ct. 934 (1995). However, by its very terms, the Consulting Agreement only prohibits plaintiff from engaging in consulting and other activities in the automobile industry within a 30-mile radius around 1095 Commonwealth Avenue in Boston, Massachusetts. Insofar as plaintiff is a New Hampshire corporation, and Lutz Wallem, the principal consultant of Interadd, is a New Hampshire resident, said prohibition does not foreclose all business and other occupational activities.

Accordingly, the court finds and rules that plaintiff has made an insufficient showing of irreparable harm.

### (3) Equitable and Public Interest Factors

Due to unsuccessful showings on the first two elements of the preliminary injunction quartet, the court declines to proceed further and herewith denies plaintiff's motion to compel payments under the Consulting Agreement. See, e.g., Performance

13

Unlimited, supra, 52 F.3d at 1381 ("'A district court is required to make specific findings concerning each of the four factors, unless fewer are dispositive of the issue.'" (quoting International Longshoremen's Ass'n v. Norfolk S. Corp., 927 F.2d 900, 903 (6th Cir.), cert. denied, 502 U.S. 813 (1991))).

## 2. Defendants' Motion to Dismiss or Stay Pending Arbitration (document 26)

Defendants' have renewed their motion to dismiss or stay this action pending arbitration of the core issue raised herein: May amounts due Interadd under the Consulting Agreement be offset by amounts due from the Wallems under the Indemnity Agreement?[8] Finding said motion now ripe for consideration, the court turns to the merits of same.[9]

---

[8] In its order of February 2, 1995, the court noted that a similar motion then raised was premature, and thus deferred ruling thereon. Order of Feb. 2, 1995, at 29. Plaintiff has subsequently amended the original state court writ, see Amended Complaint (filed Feb. 21, 1995), and the resultant pleadings now put this issue squarely before the court.

[9] Although this court previously stated, "the question of whether defendants owe any amount to Interadd under the Consulting Agreement is separate and distinct from the question of whether defendants may offset said amount against amounts the Wallems allegedly owe the defendants under the Indemnity Agreement," Order of Feb. 2, 1995, at 28, it is further noted that the disputes raised herein "are all interrelated and that the most effective resolution of the controversy at issue is one that also resolves the other[s] . . .," id. at 25.

14

Defendants concede that "[t]here is no dispute as to the payments to which Interadd would have been entitled absent the offsets." Defendants' Reply Memorandum of Law at 1. However, defendants maintain that said payments are subject to offset and, further, any questions regarding the propriety of such offsets are subject to arbitration. Id. Plaintiff objects to the arbitration requested by the defendants but consents to arbitration in New Hampshire by a New Hampshire arbitrator, "with a first preference being for Judge [Arthur E.] Bean [Jr.]." Plaintiff's Objection ¶ 4.

### a. Stay Pending Arbitration

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Hewlett-Packard Co., Inc. v. Berg, 61 F.3d 101, 105 (1st Cir. 1995) (quoting Landis v. North Amer. Co., 299 U.S. 248, 254 (1936)) (alteration in Berg). Moreover, "[w]here there is an agreement to arbitrate, the [Federal Arbitration Act] reflects a strong, well-established, and widely recognized federal policy in favor of arbitration." Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer, 29 F.3d 727, 730 (1st Cir. 1994) (citations omitted), aff'd, ___ U.S. ___, 115 S.

15

Ct. 2322 (1995).

Insofar as "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit,'" McCarthy, supra note 7, 22 F.3d at 354 (quoting AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648 (1986)) (other quotation omitted), "a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate *some* claims," id. at 354-55.

> Once that agreement has been proven and the protagonists identified, . . . courts [are instructed] to use a particular hermeneutical principle for interpreting the breadth of the agreement; that is, if the contract language chosen by the parties is unclear as to the nature of the claims to which an agreement to arbitrate extends, a "healthy regard" for the federal policy favoring arbitration requires that "any doubts concerning the scope of an arbitrable issue be resolved in favor of arbitration."

Id. at 355 (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)) (other citations omitted).

The documents before the court reveal that an agreement to arbitrate Consulting Agreement payment offsets existed and said agreement was entered into, in the least, between all of the

16

parties presently before the court.[10]  See March Agreement ¶ 7

("prior to any future offsets . . . MBPA or Foreign Motors shall

notify Interadd, in writing, of its intention to offset . . . .

Upon any dispute of the propriety and/or amount of offset the

parties hereby agree to submit the dispute to a single arbitrator

. . . .").  With these prerequisites satisfied, the court now

turns to the arbitration language itself, mindful of the "healthy

regard", McCarthy, supra note 7, 22 F.3d at 355, federal policy

affords to the arbitration of issues.

Although the Consulting Agreement makes no provision for

offsets, it does state that the "Agreement may be amended only by

a written agreement among the parties hereto."  Consulting

Agreement ¶ 8.[11]  An earlier attempt by defendants to offset

payments was resolved among plaintiff, defendants, and the

Wallems and is memorialized in the March Agreement.  Included in

said March Agreement is the statement that "[t]he parties to this

Agreement hereby agree that prior to any future offsets (after

February 18, 1993) by MBPA or Foreign Motors, MBPA or Foreign

_____

[10]Lutz and Waltraud Wallem, both signatories to the March
Agreement, are not parties to this action, but are subjects of a
pending motion to join.  See infra, note 12.  Moreover, the court
notes that it is the Wallems who initially sought recourse to the
arbitral forum.  See supra pp. 11-12 & n.7.

[11]The parties to the Consulting Agreement are Foreign
Motors, MBPA Corp., and Interadd.

17

Motors <u>shall notify Interadd</u>, in writing, of its intention to offset . . . ." March Agreement ¶ 7 (emphasis added). In the view of the court, given the context and circumstances surrounding the creation of the March Agreement, such language serves to amend the Consulting Agreement and, by its terms, directly pertains to whether disputes over compensation and offset are to be resolved by medium of arbitration. Finding the issues raised by the instant litigation nearly identical to those potentially resolved through arbitration, the court, while retaining jurisdiction over the parties, herewith grants defendants' motion to stay these proceedings pending arbitration.[12]

### b. The Arbitral Forum

Resolution of the arbitration issue in favor of arbitration engenders another controversy; namely, the identity of the arbitrator and location of the arbitral forum. Although Wayne Shenk is identified in the documents as the Single Arbitrator approved by the parties, he has allegedly declined to assume said

---

[12]In consequence of today's ruling on Defendants' Motion to Stay Pending Arbitration, Defendants' Motion to Join Lutz and Waltraud Wallem (document 33) is denied. Defendants are, however, granted leave to refile said motion should arbitration not resolve the issues underlying the instant litigation.

role in this matter.  <u>See</u> Declaration of Bruce H. Spatz ¶ 12 (Defendants' Exhibit G).  The "Single Arbitrator Procedure" contains no provision for an alternate arbitrator should the denominated arbitrator decline to serve, but does provide that the "arbitrator is to be totally independent, unconnected with any party hereto."  November 6, 1987, Memorandum ¶ 15.

The court finds that plaintiff's claim to arbitration in New Hampshire is without merit.  The fact that this court has assumed jurisdiction in no way militates in favor of arbitration in this forum, especially when plaintiff had previously agreed to conduct arbitration with Mr. Shenk in Boston.  <u>See</u> Kalil Letter at 1.  By any reading of the documents, and in consideration of the prior dealings between the parties, the court finds that the parties contemplated arbitration to occur, if at all, in Massachusetts. Accordingly, the court further finds and rules that the parties shall submit to arbitration in Massachusetts before an arbitrator to be selected by the Superior Court of Middlesex County (Massachusetts).

<u>Conclusion</u>

For the reasons set forth herein, plaintiff's motion for an order of payments (document 18) is denied; defendants' motion to dismiss or stay (document 26) is granted insofar as this action

19

is stayed pending arbitration in Massachusetts; and defendants'
motion to join Lutz and Waltraud Wallem (document 33) is denied
with leave to refile.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

October 4, 1995

cc:   Ralph R. Woodman, Jr., Esq.
      John A. Malmberg, Esq.
      Steuart H. Thomsen, Esq.