[No. C022965. Third Dist. Jan. 30, 1997.]

DOROTHY H. DAVENPORT, Plaintiff and Respondent, v.
BLUE CROSS OF CALIFORNIA, Defendant and Appellant.

**COUNSEL**

James H. Fleming and Robert R. Pohls for Defendant and Appellant.

Leibovic & Tysch and Gary L. Tysch for Plaintiff and Respondent.

**OPINION**

**SIMS, Acting P. J.**—In this action alleging tortious breach of a health insurance contract, defendant Blue Cross of California (Blue Cross) appeals from an order granting a preliminary injunction in favor of plaintiff Dorothy H. Davenport, enjoining Blue Cross from refusing coverage for medical treatment for ovarian cancer pending arbitration. Blue Cross contends, among other things, that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) precludes the granting of the preliminary injunction because plaintiff failed to justify the injunction as necessary to preserve the effectiveness of arbitration. We shall conclude that, under both the FAA and California law, the trial court may grant provisional relief pending contractual arbitration only where it is necessary to preserve the effectiveness of arbitration—a test which plaintiff failed to meet in this case. We shall therefore reverse.

## Factual and Procedural Background

Plaintiff, a special education teacher in Calaveras County, is covered for major medical and health expenses through a plan provided by the Tuolumne Joint Powers Authority (JPA). The JPA plan is entirely self-funded. Blue Cross is compensated for administering and servicing the JPA plan. The JPA is solely responsible for funding the payment of claims under the JPA plan. Blue Cross has no financial obligation under the plan and passes through 100 percent of the cost of any claims to the JPA.

In September 1994, plaintiff was diagnosed with ovarian cancer. Surgery was performed, and plaintiff was placed on a regimen of six rounds of standard chemotherapy. A "second look" surgery in May 1995 revealed that, although the initial regimen of chemotherapy was 99 percent effective, there was evidence of some remaining cancer. A second regimen of six rounds of chemotherapy was then administered. Plaintiff's cancer responded positively to this second regimen of chemotherapy, which was completed in November 1995. Her primary oncologist thereafter found no demonstrable evidence of disease.

Plaintiff consulted with doctors who recommended treatment combining high-dose chemotherapy with autologous bone marrow transplant (HDCT with ABMT), to be provided at the Stanford University Medical Center, the goal of which was to prevent recurrence of the cancer. In HDCT with ABMT, bone marrow or peripheral stem cells are drawn from the patient and stored. HDCT is then administered, in a procedure designed to destroy the cancer cells. An unavoidable side effect of HDCT is destruction of the patient's bone marrow and suppression of the autoimmune system and clotting abilities. In an attempt to combat the side effects, the previously drawn bone marrow or peripheral cells are reinfused into the patient, with the goal of repopulating the patient's bone marrow. Up to 5 percent of the patients who have HDCT with ABMT die from the treatment itself, a percentage which one doctor characterized as low.

Plaintiff submitted a request to Blue Cross to obtain precertification under the JPA plan for HDCT with ABMT. Blue Cross referred the request for review to Dr. George Au, an oncologist and medical consultant to Blue Cross. After review, Dr. Au concluded HDCT with ABMT, as a treatment for plaintiff's epithelial cell ovarian cancer, would be "investigational" within the meaning of the contract. The JPA plan excludes coverage for "investigative procedures," which are defined under the policy as "those [procedures] that have progressed to limited use on humans, but which are not widely accepted as proven and effective procedures within the organized

medical community." Dr. Au's conclusion was consistent with a May 1995 determination by Blue Cross's medical advisory panel of 16 physicians, that HDCT with ABMT was generally accepted in the medical community as safe and effective for certain medical conditions, but not for the type of cancer (epithelial cell ovarian cancer) which afflicted plaintiff.

On December 5, 1995, Blue Cross informed plaintiff in writing that her request for precertification for HDCT with ABMT treatment for her ovarian cancer was denied. Blue Cross further informed plaintiff: "If you do not accept the decision, you must submit your dispute to binding arbitration according to your contract. You must ask for arbitration in writing."

The JPA plan's arbitration clause provides:

"BINDING ARBITRATION

"Any dispute between the Member and Blue Cross regarding the decision of Blue Cross must be submitted to binding arbitration if the amount in dispute exceeds the jurisdictional limits of the small claims court. This arbitration is begun by the Member making written demand on Blue Cross.

"This arbitration will be held before a designated neutral arbitrator appointed by the county medical association of the county in which the services were provided. If the county medical association declines or is unable to appoint an arbitrator, the arbitration will be conducted according to the rules of the American Arbitration Association.

"Any dispute regarding a claim for damages within the jurisdictional limits of the small claims court will be resolved in such court.

"THE ARBITRATION FINDINGS WILL BE FINAL AND BINDING."

Plaintiff did not take any action to pursue arbitration.

Instead, on December 28, 1995, plaintiff filed a complaint in Amador County Superior Court. The complaint was captioned: "TORTIOUS BREACH OF INSURANCE CONTRACT (Compensatory and Punitive Damages) [¶] 1. Declaratory Relief [¶] 2. Injunctive Relief [¶] 3. Breach of Duty of Good Faith and Fair Dealing [¶] 4. Breach of Contract [¶] 5. Negligence." The matter was assigned to the court's fast-track calendar.

On January 17, 1996, plaintiff served the complaint on Blue Cross and applied to the trial court for a preliminary injunction pursuant to Code of

Civil Procedure section 525 et seq. Plaintiff sought an injunction enjoining Blue Cross from denying coverage for the treatment, which carried an estimated cost of $150,000. Plaintiff submitted declarations from doctors urging the treatment.[1] Dr. Wendy Hu of Stanford stated in a declaration that plaintiff had a stage of cancer (stage IIIC) with a "relatively bleak prognosis," and she was "at extremely high-risk for recurrence." Dr. Hu attested that without HDCT with ABMT, plaintiff's life expectancy over five years would be less than 20 percent. Dr. Hu said: "HDCT with ABMT offers DOROTHY DAVENPORT a greater possibility that her disease will respond to treatment and offers a small but hopeful chance that her cancer will be cured." Dr. Hu's declaration said: "The statistical odds are that within an extremely short time (several months), DOROTHY DAVENPORT will relapse. . . . [¶] . . . Current evidence demonstrates that administration of HDCT with ABMT now can lead to a longer period of disease free survival. However, the window of opportunity that now exists for HDCT with ABMT can close if the tumor is given sufficient time to regrow."[2] Plaintiff filed a declaration attesting: "I am unable to fund the costs of HDCT with ABMT. Although I have some minimal savings, the amount is entirely inadequate to fund the cost of the potentially lifesaving procedure I require. I have no assets, which could be used to fund the treatment." Based on her assertions of indigency, plaintiff asked that she not be required to post bond for the preliminary injunction. (Code Civ. Proc., §§ 529, 995.240.)

Blue Cross filed an opposition to the application for a preliminary injunction and a petition to compel arbitration. Blue Cross argued plaintiff had failed to demand arbitration, as required by the health insurance contract. Blue Cross argued this case is governed by the FAA, which preempts any

[1]Blue Cross complains on appeal, as it did in the trial court, that plaintiff's evidence was incompetent and even fraudulent because, among other things, the declaration of Dr. Roy Jones was not signed but was only marked "/s/," and when contacted by Blue Cross's counsel the doctor said he had never reviewed or signed the declaration and had never evaluated plaintiff. After Blue Cross brought this to the trial court's attention, plaintiff filed (but did not serve on Blue Cross) a signed but undated "Amended Declaration" from Dr. Jones, which differed from the original declaration. We have no need to address this and other evidentiary matters raised by Blue Cross relating to the merits of the underlying dispute, because we will conclude plaintiff was not entitled to the injunction even without considering Blue Cross's contentions.

[2]On appeal plaintiff asserts, without citation to the record, that her "window of opportunity" to obtain efficacious HDCT with ABMT was three months from the date of the last standard chemotherapy in November 1995. Blue Cross asks that we disregard this and other factual assertions made in plaintiff's brief without citation to the record. Our own review of the record reveals plaintiff filed a declaration in the trial court stating she had been advised by physicians that the window of opportunity to have HDCT with ABMT was limited and would close within the first two weeks of February 1996. Blue Cross objected to this statement on the ground of unqualified opinion. It suffices for our purposes that Dr. Hu declared there was a window of opportunity of several months.

conflicting state laws. Blue Cross also argued among other things that plaintiff had unconscionably delayed so as to present an appearance of urgency and had failed to show she had been unable to obtain a timely resolution through arbitration. Blue Cross also attacked plaintiff's medical evidence and declaration of indigency (issues we need not address in this appeal).

Plaintiff did not oppose Blue Cross's petition to compel arbitration but argued in her reply papers on the preliminary injunction (filed January 31, 1996) that she "cannot afford the time that would be consumed by an arbitration . . . , which would entail selection of an arbitrator, scheduling of an arbitration, and the enforcement of an arbitration award." She argued: "Because the process of arbitration is a lengthy one and the ability to obtain immediate, emergent and equitable relief is unlikely and difficult, plaintiff has no resort but to request that this Court issue the injunction so that the position of the parties will remain undisturbed pending the finality of the arbitration." Plaintiff offered no explanation as to why she did not even begin the arbitration process at any time after the December 5, 1995, denial of coverage by Blue Cross.

On February 1, 1996, the trial court heard the application for injunction and petition to compel arbitration. On the same day, the trial court issued a preliminary injunction and order compelling arbitration in a document captioned "preliminary injunction," which stated in part:

"Pending the arbitration of this matter, this court orders that [Blue Cross] is prohibited from denying, refusing, excluding, limiting, or discontinuing coverage and benefits for performance of high-dose chemotherapy with autologous bone marrow rescue/peripheral stem cell reinfusion upon plaintiff DOROTHY DAVENPORT.

"Further, the court orders that [Blue Cross] is prohibited from refusing to authorize, preauthorize or consent to the performance of high-dose chemotherapy with autologous bone marrow rescue/peripheral stem cell reinfusion upon plaintiff. [Blue Cross] is enjoined and prohibited from refusing to reimburse plaintiff for the costs of high dose chemotherapy with autologous bone marrow transplantation/peripheral stem cell reinfusion, including, but not limited to the costs of, the harvest and storage of bone marrow and peripheral stem cells, reinfusion of bone marrow and peripheral stem cells into the plaintiff, the administration of high-dose chemotherapy to plaintiff and any and all associated treatments.

"Good cause having been shown therefor, the issuance of this preliminary injunction shall be without requirement that plaintiff post bond or surety.

"Plaintiff is ordered to proceed forthwith to arbitration."

Blue Cross filed a notice of appeal on February 6, 1996, and notified Stanford of Blue Cross's position that the appeal operated to stay enforcement of the injunction (Code Civ. Proc., § 916, subd. (a)). Plaintiff filed a petition for writ of mandate, prohibition, certiorari or other appropriate writ, asking this court to lift the stay on the injunction pending appeal. We summarily denied this petition on February 15, 1996.[3]

In connection with the appeal from the granting of the preliminary injunction, plaintiff submitted a respondent's brief asserting Blue Cross "has concealed crucial facts" from this court, because she ultimately did receive the treatment through her own resources (though she urges that the appeal not be dismissed as moot). She assertedly paid for the treatment by borrowing money from family members, mortgaging her home, and "raid[ing]" her husband's retirement account.[4]

Nothing in the record demonstrates Blue Cross was aware of these subsequent developments, and Blue Cross in its reply brief asserts it was unaware of them until it received plaintiff's brief in this appeal.

The parties' briefs also recite numerous factual issues concerning the evidence regarding the likelihood of plaintiff prevailing on the merits. These issues are not necessary to our resolution of the appeal.

---

[3] At Blue Cross's request, we take judicial notice of this court's record in that petition (*Davenport* v. *Superior Court* (Feb. 15, 1996) C022975. [nonpub. opn.]).

Blue Cross also requested that we take judicial notice of subsequent proceedings in the trial court, i.e., contempt proceedings against plaintiff for her continuing failure to comply with the court order to proceed with arbitration. We denied the request. We need not consider the parties' arguments regarding plaintiff's postinjunction failure diligently to proceed with arbitration.

We also denied plaintiff's application to produce evidence on appeal.

Finally, we disregard plaintiff's vitriolic and unsubstantiated allegation that Blue Cross filed this appeal for purposes of delay in order to deprive plaintiff of the treatment.

[4] Although briefs are outside the record, we may take the factual assertions in a party's appellate brief as admissions. (*DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011, 1019, fn. 3 [242 Cal.Rptr. 368].) We thus accept plaintiff's admission that she has already obtained the treatment using other resources.

Though not clear, it appears plaintiff may mean to suggest the closing of the window of opportunity for efficacious treatment was a "critical fact" "concealed" by Blue Cross. However, we are reviewing the trial court's order (despite its mootness), which was made while the window was still open. Moreover, the bottom line is that plaintiff never showed the matter was incapable of being arbitrated in a timely manner after Blue Cross's denial of coverage.

DISCUSSION

I. *Appealability*

An order granting a preliminary injunction is an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(6).)

II. *Mootness*

■ As indicated, plaintiff in her respondent's brief on appeal disclosed she has obtained the treatment on her own. She raises the issue of mootness but argues the appeal should be decided as a question of continuing public interest. (*DeRonde* v. *Regents of University of California* (1981) 28 Cal.3d 875, 880 [172 Cal.Rptr. 677, 625 P.2d 220] [despite mootness, appellate court may resolve important issues of substantial and continuing public interest].)

Blue Cross in its reply brief argues the only issue of public concern is whether a trial court may issue an unbonded mandatory injunction that renders arbitration ineffective in violation of the FAA. Blue Cross further contends the appeal should be dismissed as moot, but the injunction should be vacated in order to negate its effect of requiring Blue Cross to reimburse plaintiff for the cost of the treatment.

We agree this case presents a matter of continuing public importance, at least with respect to the question whether the trial court improperly issued a preliminary injunction which could render arbitration ineffective, where the plaintiff failed to show she could not obtain a timely resolution through the arbitration process. We shall conclude issuance of the injunction was improper under these circumstances. We shall therefore reverse the order on that basis and need not reach the parties' other contentions.

III. *Standard of Review*

■ The parties agree that, with respect to questions of construction of statutes and contracts not involving assessment of extrinsic evidence, our standard of review is de novo. (*Garamendi* v. *Executive Life Ins. Co.* (1993) 17 Cal.App.4th 504, 512 [21 Cal.Rptr.2d 578]; *Herman Feil, Inc.* v. *Design Center of Los Angeles* (1988) 204 Cal.App.3d 1406, 1414 [251 Cal.Rptr. 895].)

With respect to other questions, we have explained the standard of review as follows:

■ "On appeal, we determine whether the trial court abused its discretion in granting . . . the preliminary injunction. ' "[T]rial courts should evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued. [Citations.]" [Citations] " '[By] balancing the respective equities of the parties, [the trial court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' " [Citation.]

" 'The granting . . . of a preliminary injunction does not constitute an adjudication of the ultimate rights in controversy. [Citations.] Generally, the ruling on an application for a preliminary injunction rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal absent a showing that it has been abused. [Citations.]' [Citation.]

■ "Where . . . the preliminary injunction mandates an affirmative act that changes the status quo, we scrutinize it even more closely for abuse of discretion. 'The judicial resistance to injunctive relief increases when the attempt is made to compel the doing of affirmative acts. A preliminary mandatory injunction is rarely granted, and is subject to stricter review on appeal.' [Citation.] As our Supreme Court noted many years ago, '[t]he granting of a mandatory injunction pending the trial, and before the rights of the parties in the subject matter which the injunction is designed to affect have been definitely ascertained by the chancellor, is not permitted except in extreme cases where the right thereto is clearly established and it appears that irreparable injury will flow from its refusal. [Citations.]' " (*Board of Supervisors* v. *McMahon* (1990) 219 Cal.App.3d 286, 295-296 [268 Cal.Rptr. 219], fn. omitted.)

## IV. *Injunction Was Mandatory*

Plaintiff contends the foregoing standard does not apply, because the injunction was prohibitory, not mandatory. We disagree.

■ Thus, the general rule is that an injunction is prohibitory if it requires a person to refrain from a particular act and mandatory if it compels performance of an affirmative act that changes the position of the parties. (Code Civ. Proc., § 525; *Kettenhofen* v. *Superior Court* (1961) 55 Cal.2d 189, 191 [10 Cal.Rptr. 356, 358 P.2d 684]; 6 Witkin, Cal. Procedure (3d ed.

1985) Provisional Remedies, §§ 241-246, pp. 210-214.) The substance of the injunction, not the form, determines whether it is mandatory or prohibitory. (*Kettenhofen, supra,* 55 Cal.2d at p. 191.)

 Blue Cross argues the preliminary injunction in this case, though framed in prohibitory language, was mandatory because it required Blue Cross to perform affirmative acts of authorizing and paying for the treatment, thereby changing the status quo. Plaintiff argues it was merely a prohibitory injunction because it enjoined Blue Cross from persisting in an anticipatory breach of its contract, which threatened plaintiff's "very existence," and her health was the "status quo" which required preservation.[5]

We agree with Blue Cross. The injunction plainly ordered Blue Cross to perform affirmative acts which would change the position of the parties, by compelling Blue Cross to authorize and pay for plaintiff's treatment. It has been held an injunction which compels a party to perform some physical act or surrender property is mandatory. (See *Kettenhofen* v. *Superior Court, supra,* 55 Cal.2d at p. 191.) To secure an injunction, a plaintiff is required to show "that, pending a trial on the merits, defendants should be restrained from exercising the right claimed by them." (*People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10, 21 [141 Cal.Rptr. 20, 569 P.2d 125], citing *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].)

In *Agricultural Labor Relations Bd.* v. *Superior Court* (1983) 149 Cal.App.3d 709 [196 Cal.Rptr. 920], the plaintiff represented unionized farm workers who were trying to get their jobs back after a strike. The trial court issued a preliminary injunction restraining the defendants from failing or refusing to reinstate the workers and ordering the defendants not to continue in their employ the nonunion workers hired during the strike. (*Id.* at pp. 712-713.) The appellate court held the injunction, despite its prohibitory

---

[5]Blue Cross suggests that plaintiff seeks to relitigate the issue whether a mandatory injunction is automatically stayed by the filing of an appeal. Plaintiff does appear to argue that point, citing authority for the proposition that the purpose of an automatic stay is to preserve the jurisdiction of the appellate court. However, we denied plaintiff's petition to this court to lift the automatic stay, in *Davenport* v. *Superior Court, supra,* C022975, and the issue of automatic stay is now moot. We did not need to decide in that petition whether the injunction was mandatory because the petition, in addition to a cursory argument that the injunction was prohibitory, assumed the injunction was subject to an automatic stay (reacting to Blue Cross's position that a stay was in effect) and asked this court to lift the stay. Moreover, an appellate court's summary denial of a writ petition does not establish law of the case. (*Kowis* v. *Howard* (1992) 3 Cal.4th 888, 899 [12 Cal.Rptr.2d 728, 838 P.2d 250].) In any event, the issue of automatic stay is moot, but we disagree with Blue Cross if it means to suggest that this court has already decided the injunction in this case was a mandatory injunction.

language, was mandatory; it compelled affirmative action by the defendants, to rehire the strikers and terminate others. (*Ibid.*)

Here, too, the injunction compelled affirmative action which would substantially change the parties' positions. That Blue Cross may pass its costs along to plaintiff's employer (the JPA) does not alter the conclusion that the injunction is mandatory.

Plaintiff cites *Butt* v. *State of California* (1992) 4 Cal.4th 668 [15 Cal.Rptr.2d 480, 842 P.2d 1240], apparently for the supposed proposition that an injunction may be treated as prohibitory if it preserves the status quo. However, we find no reference to the terms prohibitory or status quo in the majority opinion in that case. ■ Cases are not authority for propositions not therein considered. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

■ We conclude the injunction in this case was mandatory, thereby requiring that the right thereto be clearly established and that irreparable injury will flow from its refusal. (*Board of Supervisors* v. *McMahon, supra,* 219 Cal.App.3d at p. 296.)

We discuss *post* the effect of plaintiff's contention that her health was the status quo.

We turn now to the question whether the FAA precludes the injunction in this case.

V. *Injunctive Relief Pending Arbitration*

Blue Cross argues the FAA (which applies to all contracts involving interstate commerce) precludes the granting of the preliminary injunction in this case.[6] Plaintiff does not dispute that the FAA applies to this contract as a contract affecting interstate commerce. We shall conclude the injunction was improperly granted under both the FAA and the California contractual arbitration laws.

---

[6]Blue Cross makes a due process argument in passing. The issue is waived for failure to brief it separately. (Cal. Rules of Court, rule 15(a) [each point in a brief shall appear separately under an appropriate heading]; *Live Oak Publishing Co.* v. *Cohagan* (1991) 234 Cal.App.3d 1277, 1291 [286 Cal.Rptr. 198] [reviewing court may disregard points made in violation of rule 15(a)].)

■ Section 2 of the FAA (9 U.S.C. § 2[79]) expresses "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785]; see also *Chase* v. *Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1159 [50 Cal.Rptr.2d 178].) The purpose of the FAA is to ensure judicial enforcement of privately made agreements to arbitrate. (*Allied-Bruce Terminix Cos.* v. *Dobson* (1995) 513 U.S. 265, 269-271 [115 S.Ct. 834, 837-838, 130 L.Ed.2d 753, 762].) The substantive rules of the FAA apply to state as well as federal courts. (*Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 12 [104 S.Ct. 852, 859, 79 L.Ed.2d 1, 13].) Under the FAA, "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts." (*Id.* at p. 7 [104 S.Ct. at p. 856, 79 L.Ed.2d at p. 10].)

"The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. [Citation.] But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be preempted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citation.]" (*Volt Info. Sciences* v. *Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477 [109 S.Ct. 1248, 1255, 103 L.Ed.2d 488, 499] [California statute allowing stay of arbitration was not preempted by the FAA where the parties contracted that the arbitration agreement would be governed by California law].) ■ California's statutory scheme for contractual arbitration, like the FAA, is designed to encourage resort to the arbitral process. (*Volt Info. Sciences* v. *Leland Stanford Jr. U., supra,* 489 U.S. at p. 476 [109 S.Ct. at p. 1254, 103 L.Ed.2d at p. 498]; *Rosenthal* v. *Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 406 [58 Cal.Rptr.2d 875, 926 P.2d 1061].)

■ The California Supreme Court recently indicated that not all federal provisions will operate in California state courts with respect to arbitration agreements subject to the FAA. Thus, *Rosenthal* held FAA section 4's

---

[79] United States Code section 2 provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

authorization of a jury trial for questions regarding the existence of an arbitration agreement does not operate in California state court cases involving arbitration agreements subject to the FAA. *Rosenthal* concluded the procedural provisions of the FAA are not binding on state courts, provided applicable state procedures do not defeat the rights granted by Congress. (*Rosenthal* v. *Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at p. 409.)

■ Here, the arbitration agreement did not specify application of California law, and there is no dispute the arbitration agreement is subject to the FAA. We need not decide whether the standard for granting provisional relief is procedural (hence subject to *Rosenthal*) or substantive, because for our purposes the standard is similar under both federal and state law.

■ Thus, Code of Civil Procedure section 1281.8, subdivision (b), authorizes a party to an arbitration agreement to seek a provisional remedy in the trial court pending arbitration "but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief. . . ." This requirement applies in addition to the other requirements for injunctive relief, e.g., that the applicant is likely to prevail on the merits, has no adequate alternative remedy, and will suffer irreparable harm if the injunction is denied. (Code Civ. Proc., § 526; *Woolley* v. *Embassy Suites, Inc.* (1991) 227 Cal.App.3d 1520, 1526-1529 [278 Cal.Rptr. 719].)

We conclude a similar standard applies under the FAA.

Thus, section 3 of the FAA (9 U.S.C. § 3) provides that where a party seeks to compel arbitration and the court determines the case is referable to arbitration, the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."[8]

Blue Cross acknowledges some federal courts have held the FAA does not completely strip a court of its equitable powers to grant provisional relief pending arbitration. However, Blue Cross contends, and we agree, that provisional relief in FAA cases is limited to situations where the injunction has been shown to be necessary in order to preserve the status quo so the dispute can be arbitrated and the arbitration decision can have effect— circumstances which have not been shown in this case.

---

[8]It is an open question whether section 3 of the FAA applies in state court proceedings. (*Rosenthal* v. *Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at p. 408, citing *Volt Info. Sciences* v. *Leland Stanford Jr. U.*, *supra*, 489 U.S. at p. 477, fn. 6 [109 S.Ct. at pp. 1254-1255, 103 L.Ed.2d at p. 499] and *Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 16, fn. 10 [104 S.Ct. 852, 861, 79 L.Ed.2d 1, 15].)

Thus, the Ninth Circuit (following the approach of the First, Second and Seventh Circuits) has held a trial court's entry of an order compelling arbitration does not strip the court of authority to grant a subsequent writ of possession pending the outcome of the arbitration, where provisional relief is necessary to preserve the meaningfulness of arbitration.[9] (*PMS Distributing Co., Inc.* v. *Huber & Suhner, A.G., supra*, 863 F.2d 639.) The Ninth Circuit followed a First Circuit case which held " 'a district court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for injunctive relief are satisfied. We believe this approach reinforces rather than detracts from the policy of the [FAA] . . . . We believe that the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief *to preserve the status quo pending arbitration and, ipso facto, the meaningfulness of the arbitration process.*' " (*Id.* at pp. 641-642, quoting *Teradyne, Inc.* v. *Mostek Corp.* (1st Cir. 1986) 797 F.2d 43, italics added.) The Ninth Circuit concluded: "The fact that a dispute is arbitrable and that the court so orders under [the FAA], does not strip it of authority to grant a writ of possession pending the outcome of the arbitration so long as the criteria for such a writ are met."[10] (*PMS Distributing Co., Inc.* v. *Huber & Suhner, A.G., supra*, 863 F.2d at p. 642.)

Other federal courts have reached the same conclusion. Thus, *Merrill Lynch, Pierce, Fenner & Smith* v. *Bradley* (4th Cir. 1985) 756 F.2d 1048, held ". . . where a dispute is subject to mandatory arbitration under the [FAA], a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute if the enjoined conduct would render that process a 'hollow formality.' " (*Id.* at pp. 1053-1054 [injunction necessary to stop former employee's ongoing solicitation of former employer's customers; customers cannot be "unsolicited"].)

[9]Blue Cross argues this determination in *PMS Distributing Co., Inc.* v. *Huber & Suhner, A.G.* (9th Cir. 1988) 863 F.2d 639, was dictum, because the case was decided on the basis that the writ of possession issued by the district court was not an appealable order. However, the discussion concerning propriety of injunctive relief was necessary to the decision, because the plaintiff argued the nonappealability rule applied only in cases where the writ issued before final judgment, whereas in the case before the Ninth Circuit the arbitration order assertedly constituted an entry of final judgment which stripped the court of its jurisdiction to issue subsequent provisional remedies because no case was pending. (*Id.* at pp. 640-641.) We thus do not consider the discussion as dictum.

[10]The criteria depend on the circumstances but include a balancing of the likelihood of the plaintiff's success on the merits and whether the injunction will save the plaintiff from irreparable injury. (*Performance Unlimited* v. *Questar Publishers, Inc.* (6th Cir. 1995) 52 F.3d 1373, 1381.) The "irreparable injury" factor encompasses consideration whether the irreparable injury is the type of injury which would "render the arbitration process either meaningless or a hollow formality" because a decision from the arbitrator in favor of the party seeking the injunction could not return it to the status quo ante. (*Id.* at p. 1381 [evidence that licensor would suffer economic insolvency without payment of royalties from publisher established irreparable harm necessary for preliminary injunction].)

We believe these cases are well reasoned and provide authority for the grant of provisional relief in an FAA case where the party seeking the relief establishes, as a component of a showing that he or she will be irreparably harmed without the injunction, that the injunction is necessary to preserve the status quo and render arbitration meaningful.

Blue Cross points out there is a split in the federal courts, because the Eighth Circuit has ruled the grant of injunctive relief in an arbitrable controversy abrogates the intent of the FAA. (*Merrill Lynch, Pierce, Fenner & Smith* v. *Hovey* (8th Cir. 1984) 726 F.2d 1286; see *Performance Unlimited* v. *Questar Publishers, Inc., supra,* 52 F.3d 1373, 1377-1381 [discussing split in federal cases].[11]) Blue Cross urges us to adopt the Eighth Circuit's view that congressional intent to facilitate expeditious arbitration would be thwarted by allowing injunctions in FAA cases because the judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator. However, we believe arbitrators are capable of reaching their own conclusion on the merits of the dispute, understanding that a preliminary injunction does not constitute an adjudication on the merits.

We conclude a court may grant provisional relief pending arbitration under the FAA if the party seeking the relief establishes the necessity of the injunction to preserve the status quo pending arbitration in order to avoid nullification of the arbitration process. Where such a showing is made, the court may step in and freeze the situation so the arbitration can have effect.

We agree with the Third Circuit that the requirement of preserving the status quo pending arbitration is not a separate jurisdictional test but is a "summary explanation of the need to protect the integrity of the applicable dispute resolution process." (*Ortho Pharmaceutical Corp.* v. *Amgen, Inc.* (3d Cir. 1989) 882 F.2d 806, 814; see also *Performance Unlimited* v. *Questar Publishers, Inc., supra,* 52 F.3d at p. 1381 [treating the issue under the irreparable injury inquiry]; *Merrill Lynch, Pierce, Fenner & Smith* v. *Bradley, supra,* 756 F.2d at p. 1055 [district court, by finding that applicant faced irreparable harm, implicitly found arbitration of dispute would be a hollow formality absent preliminary relief].) "[B]ecause the district court must focus on preservation of the integrity of the arbitration process, the relief granted need not be limited to restoring the parties precisely to their pre-litigation

---

[11]We note plaintiff appears to believe we are compelled to follow the Ninth Circuit, because that is the law in "this" circuit. However, we follow the Ninth Circuit in this case because we agree with its reasoning, not because we are compelled to do so. (*Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869, 879 [271 Cal.Rptr. 513] [California Court of Appeal need not follow Ninth Circuit where the federal circuits are in conflict on a federal question].)

position without regard to the irreparable injury that movant faces. If the existing 'status quo' is currently causing one of the parties irreparable injury *and thereby threatens to nullify the arbitration process*, then it is necessary to alter the situation to prevent the injury." (*Ortho Pharmaceutical Corp., supra*, 882 F.2d at p. 814, italics added.)

 Thus, under both California law and the FAA, the trial court has authority to grant injunctive relief pending contractual arbitration, but only if it is necessary to preserve the effectiveness of arbitration.

Arguably, the California standard may be broader, in that Code of Civil Procedure section 1281.8 does not mention preservation of the status quo. Thus, it could be argued that under California law a court may grant an injunction necessary to preserve the meaningfulness of arbitration, even though the injunction will change the status quo. However, the matter has not been argued by the parties, and we have no need to decide this question because, as will appear, plaintiff failed to establish even the necessity of injunctive relief to preserve the meaningfulness of arbitration.

In their briefs, the parties disagree on what was the status quo which needed to be preserved in order to render arbitration effectual. Blue Cross argues the status quo was to leave things as they were, and the status quo would be changed if Blue Cross were required to authorize and pay for the treatment before arbitration. Blue Cross's position has merit.

Thus, if the injunction were allowed to stand, Blue Cross would have had to authorize and pay for the treatment requested by plaintiff, even though the question of the coverage for this treatment under the JPA plan would be the central issue at arbitration. Whatever the outcome of the arbitration, the trial court's order would mean Blue Cross had effectively already lost the case in substance. Moreover, plaintiff swore she was unable to pay for the treatment (though she later obtained the money). Thus, any arbitral ruling that the requested treatment was not covered by the JPA plan could be rendered moot by the fact that payment had already been made on behalf of a party who had sworn she did not have the assets or income to make repayment.

On the other hand, plaintiff's health may also be a factor in the status quo. The arbitration dispute could be mooted if the opportunity to provide treatment passed without treatment being provided, to the detriment of plaintiff's health. Plaintiff urges this position.

Blue Cross replies that plaintiff's position is based on insupportable assumptions—that she was terminally ill,[12] that the treatment would preserve or prolong her life, and that she could not have obtained timely resolution in arbitration.

We believe that, even assuming in plaintiff's favor that she had the right to preserve the status quo of her health, given the strong policies in favor of arbitration and given plaintiff's assertion that an injunction was necessary because time was of the essence in obtaining the medical treatment, in order to establish the need for provisional relief it was her burden to show she was unable to obtain a timely resolution through arbitration. Otherwise, a party could subvert the arbitration process by delaying arbitration.

Thus, plaintiff should have made a demand for arbitration back in December, after Blue Cross's denial of coverage, and she should have requested an arbitration hearing on an accelerated basis if necessary, and allowed Blue Cross to meet her demand. If she could not obtain a timely hearing, then she may have been in a position to make the necessary showing to the trial court.

As it was, plaintiff never made a demand for arbitration. Nor did she make any evidentiary showing that arbitration could not be concluded within the window of opportunity available for her treatment. All she did in the trial court was argue in her reply papers (filed in the trial court almost two months after Blue Cross's denial of coverage): "The plaintiff has a very narrow opportunity within which to have her treatment. Therefore, the plaintiff cannot afford the time that would be consumed by an arbitration . . . , which would entail selection of an arbitrator, scheduling of an arbitration, and the enforcement of an arbitration award." These unsworn averments in a memorandum of law prepared by counsel do not constitute evidence. (*Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1090 [223 Cal.Rptr. 410].)

It could be that at the time of the hearing on the preliminary injunction, there was not enough time to go through the arbitration process. However, plaintiff did not make that showing. Even assuming for the sake of argument that we accept the impossibility of obtaining a timely arbitration decision at that late date, there was no showing that such circumstance was attributable to anything other than plaintiff's own delay in failing to demand an arbitration hearing. A preliminary injunction is an equitable remedy, and as Blue

---

[12]Plaintiff asserts she did not need to show terminal illness, because the test is whether irreparable injury will occur, not whether death will occur. However, death was the irreparable injury which plaintiff asserted in the trial court. Thus, she argued in the trial court that she would suffer irreparable injury because without the treatment she was "at increased and substantial risk that her cancer [would] recur. Should her cancer recur, [her] condition would be terminal."

Cross argues, one who seeks equity must do equity. (*Ephraim* v. *Metropolitan Trust Co.* (1946) 28 Cal.2d 824, 837 [172 P.2d 501]; *Vacco Industries, Inc.* v. *Van Den Berg* (1992) 5 Cal.App.4th 34, 52 [6 Cal.Rptr.2d 602].) Thus, plaintiff cannot create a justification for emergency relief by sitting on her rights until she creates an emergency situation. Blue Cross was prejudiced by the issuance of an injunction which would have the effect of rendering arbitration a hollow formality.

Plaintiff never offered any explanation—in the trial court or on appeal—as to why she did not at least begin the arbitration process before the February 1, 1996, court hearing on the preliminary injunction. On appeal she says Blue Cross's December 5, 1995, denial of her claim came "during the midst of the 1995 holiday season," and she had to get a lawyer. However, she had a lawyer before December 28, 1995, the date she filed the court action. Plaintiff never showed that an arbitration could not have been completed in time, had she requested an arbitration hearing in December. Plaintiff also asserts on appeal that her attorney told defense counsel that plaintiff would pursue arbitration if arbitration could occur at or near the time scheduled for the February 1, 1996, injunction hearing, but defense counsel did not give an assurance that the arbitration could be completed within that time period, instead focusing on its position that the trial court lacked jurisdiction to grant the injunction. Plaintiff fails to state when that conversation took place. Blue Cross's reply brief indicates it was only five days before the trial court hearing. That defense counsel did not assure plaintiff of an arbitration hearing before the court hearing does not help plaintiff's case. She does not argue or cite any evidence that Blue Cross refused to cooperate in setting an arbitration hearing. She never demanded arbitration, as required by the contract, which provides "arbitration is begun by the Member making written demand on Blue Cross." It was up to plaintiff to set the wheels in motion. Having never made a demand for arbitration and having instead forced Blue Cross to defend a court action for injunctive relief, plaintiff cannot blame Blue Cross for failing to assure her of an arbitration hearing at that late date. Contrary to plaintiff's implication, Blue Cross did not have the burden to prove to the trial court that arbitration could be accomplished in time for efficacious treatment.

Plaintiff does not argue a December or January demand for arbitration could not have yielded a timely hearing. Instead, she argues pursuit of arbitration prior to the court hearing would have been futile, because arbitrators cannot grant injunctive relief. However, that is a nonissue. We do not hold plaintiff was required to seek injunctive relief from the arbitrator. The problem with plaintiff's case is that she did not even set the wheels in motion to try to obtain a timely arbitration. Had she tried but been unable to

get a timely arbitration, she may have had some basis for injunctive relief in the trial court. Having failed to do so, she had no basis for obtaining injunctive relief.

Plaintiff argues there was no longer any urgency in pursuing arbitration once Blue Cross filed its appeal, the window of opportunity closed, and she obtained the treatment on her own. However, these postinjunction events are irrelevant to the question whether plaintiff made a sufficient showing to obtain the injunction.

We conclude the trial court abused its discretion in granting the mandatory preliminary injunction. We therefore need not address Blue Cross's contentions that plaintiff failed to show she would prevail on the merits, and that the trial court abused its discretion in failing to require plaintiff to post a bond or undertaking.

### DISPOSITION

The judgment (order) granting the preliminary injunction is reversed. Blue Cross shall recover its costs on appeal.

Nicholson, J., and Morrison, J., concurred.