Filed 10/6/15  Reyes v. Carehouse Healthcare Center CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARICELA REYES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CAREHOUSE HEALTHCARE CENTER, LLC et al.,<br><br>    Defendants and Appellants. | G050251<br><br>(Super. Ct. No. 30-2013-00693341)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Frederick P. Aguirre, Judge.  Affirmed.

Wroten & Associates, Kippy L. Wroten, Laura K. Sitar and Andrea R. Sitar, for Defendants and Appellants.

Aegis Law Firm, Samuel W. Wong, Erin W. Kendrella and Sam Kim, for Plaintiff and Respondent.

## INTRODUCTION

Carehouse Healthcare Services, LLC, and Southwest Payroll Services, LLC, appeal from an order denying their petition to compel the arbitration of an employment-related lawsuit filed by Maricela Reyes. Reyes was fired from her job at a Carehouse skilled nursing facility. She filed suit against Carehouse and Southwest, alleging both discrimination and unpaid wages claims. Carehouse and Southwest petitioned to compel arbitration. The trial court denied the petition, citing several features of the agreement it considered substantively unconscionable.

We affirm the order, but for different reasons. As to Carehouse, the agreement, taken as a whole, imposed a four-step dispute resolution process on the employee – with arbitration as the last step – and made the first step mandatory. Under ordinary contract law principles – which must be applied to arbitration agreements – preventing Reyes from performing the first step, by firing her outright, excused her from performing the rest of the contract. As to Southwest, nothing in the record established that it was either Reyes' employer or Carehouse's agent and therefore encompassed by the arbitration agreement. No evidence indicated that Reyes had agreed to arbitrate with Southwest. The petition to compel arbitration was correctly denied.

## FACTS

Reyes alleged that Carehouse hired her as a licensed vocational nurse in April 2006 to work at its facility in Santa Ana. She was fired on June 8, 2012. Her complaint alleged a combination of Fair Employment and Housing Act claims, such as age and race discrimination, and Labor Code claims, such as failure to pay wages and overtime. The first amended complaint named Carehouse and Southwest as defendants. Reyes alleged receipt of a right to sue letter on January 4, 2013, although the letter is not attached, and she filed suit in December 2013.

Defendants petitioned to compel arbitration in February 2014. They attached a copy of an Employment Dispute Resolution (EDR) Book and an

2

acknowledgment form signed by Reyes in 2011. The petition included two other signed acknowledgment forms referring to an Employee Handbook (from 2006) and a Code of Conduct (in 2007). Apparently the point of these latter two exhibits was to authenticate Reyes' signature.

The EDR Book outlined a four-step process to resolve employment-related disputes, including "claims related to discipline, discrimination, fair treatment, harassment, termination, and other legally protected rights." The first step was "open door resolution," which required the employee to take the problem to a superior, preferably his or her supervisor, but to any supervisor or manager if the employee's own supervisor was not a suitable confidant. The book cautioned the employee that "you may not attempt to resolve your dispute through any of the other EDR Program steps if you have not attempted to resolve your dispute first by using the Open Door. Even though you are not bound by the outcome of the Open Door, it is a required first step of the program."

If the employee was not satisfied with the outcome of open-door resolution, the next step was to approach the Human Resources Director.[1] This person was required to investigate "all aspects of the dispute and help both sides consider the best way to settle the issue." If the employee was still not satisfied, and the dispute involved a legally protected right, the third step was mediation.[2] The employee was entitled to be represented by counsel at mediation. Reimbursement of legal fees was available in some circumstances. Finally, if the previous three steps failed to secure a resolution of the problem, the parties went to binding arbitration.

The EDR Book further provided that the Federal Arbitration Act governed the agreement to be bound by the four-step process. The book included a confidentiality

---

[1] The EDR book stated that the employer hired an outside agency, Skilled Healthcare, LLC, to rovide HR services and to furnish a person to serve as the EDR Program Administrator.

[2] If the dispute did not involve a legally protected right, the HR step was the last one.

3

clause, a clause relating to modification of the program, and a clause exempting certain kinds of claims from the program. If the dispute resolution process went to mediation or arbitration, the employee was charged a $50 fee for each. The program covered "all employment-related disputes between you and all of our . . . affiliates . . . and as a result all employment-related disputes between you and any of those . . . entities must be resolved through the EDR Program as if it were between you and us." Reyes stated in her opposition to the petition to compel arbitration that she had no opportunity to use the EDR process with respect to her termination.

The trial court denied the petition on several grounds of substantive unconscionability, after determining that Reyes had shown a "limited degree" of procedural unconscionability. Both Carehouse and Southwest have appealed from this order.

## DISCUSSION

**I.** **Petition of Carehouse to Compel Arbitration**

Where the material facts are not in dispute, an appellate court may decide the enforceability of an arbitration clause de novo. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1670.)

As our Supreme Court has held, "when a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence. If the party opposing the petition raises a defense to enforcement . . . that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394,

4

413.)  As it applies in this case, the rule means Carehouse has the burden of producing prima facie evidence of the existence of an arbitration agreement.  If it does so, then the burden shifts to Reyes to produce evidence the agreement should not be enforced – for example, because it is unconscionable.

An arbitration agreement is above all a contract, and basic contract principles apply to it.[3]  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 787-788.)  Indeed, the United States Supreme Court has repeatedly emphasized the contractual nature of an arbitration agreement (see, e.g., *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 683-684; *Volt Info. Sciences v. Bd. of Trustees* (1989) 489 U.S. 468, 478) and repeatedly thwarted efforts to apply rules or standards to arbitration agreements that differ from those applying to contracts in general.[4]  (See, e.g., *Preston v. Ferrer* (2008) 552 U.S. 346, 356-357; *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 679, 686-687; *Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 281; *Perry v. Thomas* (1987) 482 U.S. 483, 490; see also *AT&T Mobility LLC v. Concepcion* (2011) 131 S.Ct. 1740, 1747.)

One principle of contract interpretation is that the agreement must be read as a whole.  (Civ. Code, § 1641.)  Another is that the party drafting or promoting the agreement is responsible for the unintended consequences that ambiguous or incomplete contractual language may produce.  (Civ. Code, § 1654; see *Badie v. Bank of America, supra*, 67 Cal.App.4th at p. 801 [interpretation against drafter especially important in adhesion contracts].)  As to enforcement, a party to a contract is excused from performance if the other party renders performance impossible.  (Civ. Code, §§ 1511, 1596; *Ninety Nine Investments, Ltd. v. Overseas Courier Service (Singapore) Private, Ltd.* (2003) 113 Cal.App.4th 1118, 1135-1136); *Howard J. White, Inc. v. Varian*

---

[3]  A petition to compel arbitration is, in essence, a request for specific performance.  (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 29.)

[4]  The Federal Arbitration Act provides that an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract."  (9 U.S.C. § 2.)

*Associates* (1960) 178 Cal.App.2d 348, 355-356 [defendant's prevention excused plaintiff's performance]; *Taylor v. Sapritch* (1940) 38 Cal.App.2d 478, 481 ["prevention by one party will excuse want of performance or delay on the part of the other"]; 1 Witkin, Summary of Cal. Law, Contracts (10th ed. 2005) § 831, p. 920 ["If the impossibility exists at the time the agreement is made, no duty . . . arises. [Citations.] However, if it occurs after the making of the agreement, the duty of the promisor is discharged, i.e., his performance is excused. [Citations.]." (Italics omitted.).].)

The EDR Book sets a collision course between dispute resolution and Reyes' status – confirmed several times in the EDR Book – as an at-will employee. And in this case, the two have collided. The EDR process does not obligate the employer to engage in the four steps. If the employer is dissatisfied with the employee, it may but does not have to send a supervisor to talk to him or her, then get HR involved, and finally go through mediation and arbitration. Reyes' termination itself demonstrated the employer's ability to act without engaging in the four-step process.[5]

This is not surprising. As articulated both in the EDR Book and in the acknowledgement form she signed in 2011, Reyes was an at-will employee, whom Carehouse could terminate for any reason or no reason. (See *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 392; Lab. Code, § 2922.) If Carehouse caught Reyes pilfering drugs or cash, for example, she would most likely be fired immediately, without any nonsense about mediation or arbitration. Likewise, if Carehouse decided to downsize its staff, starting with Reyes, it would not seek an arbitrator's permission.[6]

---

[5] Appellants' opening brief stated, "Carehouse . . . discovered Reyes had made a serious medication error while caring for an elderly patient. . . . After an investigation, the decision was made to terminate her employment immediately." "Immediately" appears to mean without going through the four steps. We may take factual statements in a party's appellate briefs as admissions. (See *Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 444, fn. 4.)

Reyes discussed the lack of mutuality in her brief; appellants' reply brief does not mention this issue.

[6] We do not address the issue of whether the agreement is unconscionable because it is one-sided. Our analysis focuses instead on whether Reyes was excused from performance.

6

The dispute resolution agreement, taken as a whole, provides, "[Y]ou [i.e., the employee] may not attempt to resolve your dispute through any of the other EDR Program steps if you have not attempted to resolve your dispute first by using the Open Door. Even though you are not bound by the outcome of the Open Door, it is a *required* first step of the program." (Italics added.) By firing her outright, Carehouse made it impossible for Reyes to use Open Door. She could no longer go to a supervisor to seek a resolution of her claims about discrimination, retaliation, and unpaid wages. Indeed, she no longer had a supervisor. Carehouse's agreement emphasized that this first step was the sine qua non of a dispute resolution process culminating in arbitration. Terminating an employee immediately – as Carehouse was unquestionably entitled to do – wiped out access to the dispute resolution machinery.

One can easily see the sinkhole waiting for an employee who had been summarily fired before engaging in the first step, Open Door Resolution. The employee signed away his or her right to a civil lawsuit by executing the acknowledgement form. But the acknowledged agreement itself *required* the employee to engage in step one and explicitly provided that access to steps two through four depended on completing the first step. So a former employee who failed to engage in step one (because he was no longer employed) could *neither* arbitrate *nor* file suit.

Carehouse repeatedly asserts that Reyes agreed to arbitrate her legally protected employment-related claims. Not so. Reyes agreed to engage in a four-step process that *culminated* in arbitration of her legally protected claims. Carehouse cannot pick and choose the terms it wants honored – dump the Open Door part, slide over steps two and three, but enforce the arbitration part – when all the terms are part of a single

A one-sided arbitration agreement is not necessarily unconscionable and therefore unenforceable. In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, our Supreme Court stated, "This is not to say that an arbitration clause must mandate the arbitration of all claims between employer and employee in order to avoid invalidation on grounds of unconscionability. . . . But an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Id*. at p. 120; see *Pinnacle Museum Tower Assn v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 248-249.)

agreement. (See *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503 [contracts interpreted to avoid surplusage].) Ignoring the mandatory nature of the first step would render all the related language surplusage.

Because we hold that Reyes was excused from performing the arbitration agreement, we do not address the issue of unconscionability.

**II.        Petition of Southwest to Compel Arbitration**

A person cannot be compelled to accept arbitration without an enforceable agreement to arbitrate. (*Bono v. David* (2007) 147 Cal.App.4th 1055, 1064.)

There is no evidence in the record regarding Southwest's status or role in the proceedings. The petition to compel arbitration referred to Southwest as Carehouse's "affiliated payroll services provider," but no evidence in either the moving papers or in Reyes's opposition supported this identification. Unsworn statements of counsel are not evidence. (*In re Zeth S*. (2003) 31 Cal.4th 396, 414, fn. 11 [statements in letter brief to appellate court not evidence].) In her opposition, Reyes stated that she was "informed" after filing suit that Southwest was in a "joint employment relationship with Carehouse," but there was no foundation provided for this "information," and Reyes specifically disclaimed knowing she was employed by Southwest. At the end of the reply brief in the trial court, counsel simply attached a copy of a 2007 W-2 form for Reyes, with no declaration or other foundation, showing Southwest's name and address in the "employer" box.

The dispute resolution agreement, which was entered into in 2011, was between Reyes and "[her] employer." Evidence in the record – a sworn declaration from Carehouse's director of staff development – established that Reyes worked for Carehouse at least as of 2011 when she executed the acknowledgement form. There is no evidence, however, that Reyes was employed by Southwest in 2011, that she ever agreed to arbitrate with Southwest, that Southwest is Carehouse's "affiliate," or that Southwest either was acting as Carehouse's agent and was therefore eligible to enforce the

8

arbitration agreement between Reyes and Carehouse or was somehow the intended beneficiary of the agreement.  (Cf. *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [non-signatory acting as agent entitled to arbitration]; *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1004 [same]; *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc*. (1971) 20 Cal.App.3d 668, 671[beneficiary of arbitration agreement entitled to enforcement].)  Southwest cannot enforce the arbitration agreement against Reyes.

## DISPOSITION

The order denying the petition to compel arbitration is affirmed. Respondent is to recover her costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.

9